PR OVO STY, J.
The state sues to recover of the defendant, the Pabst Brewing Company, of Milwaukee, Wis., a retail liquor license for each of the years 1908, 1909, and 1910.
The defendant brings its beer into this-state in cases containing less than five gallons, and sells it here in the same original packages, unbroken. The sales are made from a warehouse, and indiscriminately to consumers and dealers. [1] A state' cannot tax interstate commerce. Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678. [2] And defendant’s business, consisting as it does of importing and selling in the original packages, is clearly interstate commerce.
In Peirce v. New Hampshire, 5 How. 504, 12 L. Ed. 256, known as the “Licen’se Case,” the doctrine of Brown v. Maryland was held not to apply to the traffic in intoxicating liquors. But a different view was taken in Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128. And this led Congress to provide in act of August 8, 1890, commonly known as the “Wilson law” (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]), as follows:
“That all fermented, distilled or other intoxicating liquors or liquids, transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall upon, arrival in such state or territory be subject to the operation and effect of the laws of such state or territory, enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise.”
[3] The demand for the license of 1908 is made under Act No. 171, p. 387, of 1898. That act is the general state license law;, and therefore a purely revenue measure adopted in the exercise of the taxing power, and not with any propriety referable to the police power. Such being the case, its provisions, when sought to be applied to a business like defendant’s consisting exclusively of interstate commerce, fall under the doctrine of Leisy v. Hardin, supra, and not *773 within the exception established by the Wilson act.
[4] The licenses of 1909 and 1910 are demanded under Act No. 176, p. 236, of 1908, commonly known as the “Gay-Shattuck Act.’’ The defendant concedes that this act aims mainly at police regulation; but contends that it does not apply to a business such as that of defendant, and that, if it does, it is to that extent a revenue measure and regulation, and does not come within the purview of the above quoted provision of the Wilson act.
This Gay-Shattuck act is too long for reproduction here. We give in a note the material parts. It provides:
“Section 1. That hereafter for every business of conducting a barroom, cabaret, coffee house, café, beer saloon, liquor exchange, drinking saloon, grogshop, beer house, beer garden or other place where spirituous, vinous or malt liquors, or intoxicating beverages, bitters, or medicinal preparations of any kinds, are sold, directly or indirectly, in quantities of less than five gallons, the license shall be based on the annual gross receipts of said business, as follows, to wit.”
Here follows a classification of licenses, ranging from $200 to $1,600.
“Sec. 3. That no person shall sell spirituous, alcoholic, vinous or malt liquors, capable of producing intoxication, or conduct a barroom, carbaret, coffee house, café, beer saloon, beer exchange, drinking saloon, grogshop, beer house, beer garden or other place where alcoholic, spirituous, vinous or malt liquors or intoxicating beverages, or bitters, or medicinal preparations of any kind are sold, directly or indirectly, in quantities of less than five gallons, without taking out a license for such business.”
The state contends that the defendant’s business is covered by the general expression “or other place where malt liquors are sold,” which come after the specific terms “barroom, cabaret, coffee house, café, beer saloon, liquor exchange, drinking saloon, grog-shop, beer house, beer garden”; that defendant’s warehouse is a place where malt liquors are sold; that defendant sells malt liquors, and therefore comes clearly within the terms of section 3 that “no person shall sell malt liquors without taking out a license.”
The learned counsel for defendant say that no one can read this act, and escape the conviction that it is intended to apply only to places where the business of selling liquors to be drunk on the premises is carried on, such as barrooms, and not to a business like that of defendant; that defendant’s business comes under none of the specific terms made use of by this statute in designating the business upon which a license is imposed; and that the general expression “or other place where liquors are sold,” following the list of specific terms, must, under the rule ejusdem generis, be understood to mean other places of character similar to those designated by the specific terms, namely, drinking places, where liquors are sold to be drunk on the premises, and not the warehouse of a brewery where beer is sold in eases or barrels.
If section 1 of the act stood alone, this argument would have great force; in fact, would be conclusive, as appears from the following, taken from 6 Words and Phrases,
р. 5093, to wit:
“ ‘Other place,’ as used in Act Congress 1790, с. 9, § 3 [1 Stat. 113], which gives the federal courts jurisdiction of any offense committed within any fort, arsenal, dockyard, or in any other place or district of the country under the sole and exclusive jurisdiction of the United States, refers to other places of a similar character to those previously enumerated in the same section, and to that which follows. Hence, under this provision, federal courts would not have jurisdiction of an offense committed on board a ship of war lying within the harbor of Boston. United States v. Bevans, 3 Wheat. 336, 390, 4 L. Ed. 404. It does not include a place ceded to the United States as a home for disabled volunteers. In re Kelly (C. C.) 71 Fed. 545, 550.
“In construing the act of March 2, 1799 [c. 22, § 68, 1 Stat. 677], providing that no search by the officers of customs for the purpose of making seizures shall be made in any ship, vessel, dwelling house, store building or other place, unless by virtue of a magistrate’s warrant, the court said that the words ‘other place,! following the words ‘ship, vessel, dwelling house, and store building,’ cannot mean *775 ‘other place’ in the most general and extensive sense of the words. In this general sense of the words, every material object must occupy such place. If the Legislature had intended to prohibit searches for the purpose of making seizures in every case without a warrant, they would have said so in general terms, without particularly mentioning places. The words ‘other place,’ in this case, mean ‘other like place’ — that is, a place substantially the same with the place mentioned in connection with it, having in view the motive and object which induced the Legislature to prohibit an entry into those places without a warrant.”
It does not include a stagecoach. Jones v. Gibson, 1 N. H. 266, 272.
And also from the following taken from 36 Cyc. 1119, to wit:
“By the rule of construction known as ‘ejusdem generis,’ where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus. The rule is based on the obvious reason that, if the Legislature had intended the general words to be used in their unrestricted sense, they would have made no mention of the particular classes. The words ‘other’ or ‘any other’ following an enumeration of particular classes are therefore to read as ‘other such like,’ and to include only others of like character. The doctrine of ejusdem generis, however, is only a rule of construction to be applied as an aid in ascertaining the legislative intent, and does not control where it clearly appears from the statute as a whole that no such limitation was intended. Nor does the doctrine apply where the specific words of a statute signify subjects greatly different from one another, nor where the specific words embrace all objects of their class, so that the general words must bear a different meaning from the specific words, or be meaningless.”
But, very differently from counsel for defendant, we think it is impossible to read this act as a whole, and escape the conviction that it is intended to apply to every kind of business wherein intoxicating liquors are sold. The intention that it should have general application reveals itself at any number of places in its text.
In this very section 1 the proviso that the license shall not be required for selling refreshments for charitable purposes shows that the framers of the act thought its terms so sweeping as to embrace even the sale of refreshments on such occasions as church fairs; and the other proviso that druggists shall not he exempt amounts to an express declaration that the act is not limited to barrooms, but includes druggists.
The above-quoted provision of section 3, “no person shall sell malt liquors without paying a license,” etc., clearly includes defendant’s business, since defendant does that very thing, namely, sells malt liquors.
Section 4 in making provision for the manner in which a barroom or other place where spirituous liquors are sold to be drunk on the premises “may be conducted in .conjunction with a grocery” adds the-proviso that the statute “shall not apply to groceries where liquor is sold in the original packages and by measure and is not consumed on the premises.” This clearly indicates" that the statute was intended to apply to, other places than to barrooms and similar drinking places, namely, to places where liquors are sold, as by defendant, “in the original package,” not to be consumed on the premises.
Section 5 provides that no license as retail liquor dealer shall he issued to any woman. The restriction here is not merely that no license shall issue to any woman to keep a barroom, etc., but is that no license shall issue to any woman to sell liquors at retail, clearly showing that the act was not intended to have reference merely to barrooms, etc.
Section 8, in prescribing the formalities that must be observed in licensing barrooms and similar places where liquors are sold to be drunk on the premises, gives the, same list as in the preceding sections of the names by which places where liquors are sold to be drunk on the premises are commonly designated, but studiously abstains from following this list with the expression “or other place where liquors are sold,” as had theretofore *777 invariably been done in the preceding sections. This omission is most significant. It was to dispense such business as that of defendant from these formalities. Without this omission, they would have been subject to them. The omission was not accidental, as it occurs eight times in the section. Sections 10 and 11 make the same discrimination between barrooms and similar places and other places where liquors are sold, but not to be drunk on the premises.
We think that in the present case the long list of specific words was intended to be exhaustive ; that is to say, was intended to cover every possible description of places where liquors- are sold to be drunk on the premises. The list is certainly complete. It includes every name known to the language for the designation of such a place. And, that being so, the present case falls under one of the exceptions mentioned in the excerpt from Cyc., supra, to the rule of ejusdem generis or noscitur a soeiis, namely:
“Where the specific words embrace all objects of their class, so that the general words must bear a different meaning from the specific words or be meaningless.”
It is also suggested that as the defendant sells at wholesale prices, with -a small margin of profit, whereas the dealer for consumption on the premises sells at a very large margin of profit, the two kinds of business are of a totally different nature; and that it is therefore hardly to be supposed that the Legislature intended to include both in a statute having for its object the regulation, of the sale of liquors. The suggestion does not impress us as of any force.
[5] Defendant also contends that, if any provisions are found in the body of the act applicable to a business like defendant’s, such provisions are unconstitutional and null, because not covered by the title of the act. To our mind the title of the act is amply broad enough to cover any provision having for its object the regulation and licensing of the sale of liquors. It reads “An act to regulate and license,” etc.
[6] The contention that in so far as said act may be held to impose a license upon a business like defendant’s of selling beer in cases and barrels from a warehouse it is a revenue measure and not a police regulation, and therefore does not come within the purview of the Wilson act, supra, raises a question not easy of any positive or conclusive solution. The Supreme Court of the United States in the case of Pabst v. Crenshaw, 198 U. S. 17, 25 Sup. Ct. 552, 49 L. Ed. 925, divided on the question of whether a so-called inspection law which did not in reality inspect, but did in reality bring to the state treasury an annual revenue of some $300,000, was a revenue measure or a police regulation; and the same high court held in the case of Vance v. Vandercook Co., 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100, that a law by which the state of South Carolina took the liquor traffic into its own hands for purposes of revenue came within the purview of the Wilson act. In the light of these decisions, and of ethers by the same, exalted tribunal bearing upon this clause of the Wilson act, we can find no good reason to declare this Gay-Shattuck act not to be a police regulation even when imposing a license upon a business like defendant’s. The traffic in intoxicating liquors in all of its phases is admittedly within - the jurisdiction of the police power; and this Gay-Shattuck act, from its title and from its text, and, indeed, from its well-known history, part of the public history of this state, is manifestly intended to operate as a police regulation of the liquor traffic. The license imposed by it upon defendant’s business may not be distinguishable by a single feature from an ordinary license imposed for revenue purely, but, such as it is, it seems to have been imposed by way of regulation; and it is not for this court to substitute its judgment to *779 that of the Legislature in the matter, and say that this license does not regulate, hut is merely an ordinary revenue measure.
It is therefore ordered, adjudged, and decreed that the judgment appealed from be and the same is hereby affirmed, except as to the demand for the license of 1908, as to which it is set aside, and the demand of plaintiff rejected.
SOMMERVILLE, J., takes no part herein