372 So.2d 552 (1978)
STATE of Louisiana
v.
Leon GAINES.
No. 62573.
Supreme Court of Louisiana.
November 22, 1978.
On Rehearing June 25, 1979.
*553 Clayton M. Perkins, Jr., Kilbourne & Dart, St. Francisville, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leon A. Picou, Jr., Dist. Atty., William E. Woodward, Asst. Dist. Atty., A. Z. Butterworth, Special Asst. Dist. Atty., for plaintiff-appellee.
PER CURIAM.
Affirmed.
DIXON, J., dissents.

ON REHEARING
DENNIS, Justice.
Defendant Leon Gaines was indicted for the offense of simple escape, La.R.S. 14:110(A). After a jury of twelve persons found the defendant guilty as charged, he was sentenced to serve a term of four years imprisonment at hard labor, to run consecutively to his prior sentence. Defendant relies on four assignments of error in appealing his conviction and sentence.
On April 28, 1977, the defendant, an inmate of the Louisiana State Penitentiary, was assigned to work in the prison okra patch under the supervision of Cleveland Deshotel, a security guard. Deshotel placed the defendant and another trusted inmate at the end of a line of men stretched out across the okra patch. While Deshotel was occupied at the opposite end of the line, the defendant and the man next to him broke from the line and ran toward Lake Killarney located about a half mile away, although still on the prison grounds. Deshotel called out for the men to halt and fired *554 two shots, but the prisoners continued running.
Other security officers were immediately notified, and a "chase procedure" was set in motion. Upon discovering tracks leading into Lake Killarney, guard lines were set up around the lake. Just over two hours after the defendant had broken from the line of men in the okra patch, the defendant was apprehended as he emerged from the lake on the side opposite from the okra patch.
By his second assignment of error the defendant contends that the trial court erred in denying his motion for a new trial on the ground that there was no evidence to support a conviction for simple escape. It is the defendant's position that his attempt to escape was not successful because he did not depart from the confines of the penitentiary grounds before he was apprehended. Defendant contends that his actions did not come within the definition of simple escape in effect at the time of the incident.
The issue of statutory interpretation raised by the defendant is based on a 1975 amendment to the simple escape statute. Prior to its amendment in 1975, the pertinent portion of the simple escape statute read as follows:
"A. Simple escape is:
"(1) The intentional departure of a person, while imprisoned, whether before or after sentence, under circumstances wherein human life is not endangered, from lawful custody of any officer of the Department of Corrections or any law enforcement officer or from any place where he is lawfully detained by any law enforcement officer; (emphasis added) * * *"
This definition was amended by Act 450 of 1975 to read as follows:
"A. Simple escape is:
"(1) The intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned, committed, detained, or otherwise in the lawful custody of any law enforcement officer or officer of the Department of Corrections, from any place where such person is legally confined; * * *" The latter version of the statute was in effect on April 28, 1977, when the defendant departed from the line of men in the okra patch.
A careful reading of the simple escape statute before and after the 1975 amendment reveals that an important change was effected by the amendment. Whereas the former law proscribed departure either from lawful custody or departure from a place where lawfully detained, the statute as amended in 1975 omitted the disjunctive "or" so that the statute proscribed departure of a person in lawful custody from any place where he is legally confined. The defendant argues that the amended statute required both departure from lawful custody and departure from a place of confinement.[1] The defendant contends that there is no evidence of escape under this statute because he was confined not to the okra patch, but to the Angola penitentiary complex, and there is no evidence that he ever departed from the penitentiary grounds.
The statute in effect at the time of the occurrence clearly requires departure both from legal custody and from a place of confinement. Where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit. State v. Pierre, 320 So.2d 185 (La.1975); State v. Snyder, 277 So.2d 660 (La.1973). Moreover, even if the statute were found to be ambiguous, it is clear that any ambiguity must be construed favorably to the defendant. State v. Young, 357 So.2d 503 (La.1978). In the present case the simple escape statute must be construed as defendant contends, to require proof of departure from lawful custody and departure from a place of confinement.
The serious question remaining in this case is whether or not the defendant departed *555 from a place where he was legally confined within the meaning of the statute.[2] The defendant interprets place of confinement to mean the institution to which he was assigned by the Department of Corrections, i. e., the Louisiana State Penitentiary at Angola. It is apparently the state's position that the place where the defendant was confined was the okra patch.
We do not think that the interpretation of either party expresses the legislative intent. "[A]ny place where ... legally confined," as used in La.R.S. 14:110(A) must be construed as a place where the individual is actually confined, i. e., restrained by physical barriers sufficient to prevent him from going at large. See, State v. Marsh, 233 La. 388, 96 So.2d 643 (1957). Any less definitive or more ambiguous definition of place of confinement would render the statute unconstitutionally vague. See, Papachristou v. City of Jacksonville, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); State v. Tucker, 354 So.2d 1327 (La.1978); State v. de la Beckwith, 344 So.2d 360 (La.1977); State v. Johns, 339 So.2d 801 (La.1976); Connick v. Lucky Pierre's, 331 So.2d 431 (La.1976).
Applying this definition we conclude that there is no evidence in the record of this case to support a finding that the defendant departed from a "place of confinement" within the meaning of the escape statute. The record indicates that the okra patch was surrounded by a four strand barbed wire fence designed to keep cattle out and not prisoners in; no other natural or man-made barriers separated the okra patch from the rest of the Angola complex. Accordingly the defendant was not physically restrained or actually confined within the okra patch and his departure therefrom could amount to no more than an attempt to escape.
In United States v. Burks, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the United States Supreme Court held that the Double Jeopardy Clause of the Fifth Amendment precludes a second trial once a reviewing court has found the evidence to be insufficient to sustain a verdict of guilty. Accordingly, the defendant in the present case may not be retried for the offense of simple escape upon remand.
The defendant's conviction and sentence are reversed, and the case is remanded to the district court for further proceedings not inconsistent with the views expressed herein.
REVERSED AND REMANDED.
SUMMERS, C. J., and MARCUS, J., dissent.
NOTES
[1] The statute was amended again by Act 177 of 1978 by adding the word "or". The crime of simple escape can now apparently be commited by either departing from lawful custody or departing from a place of confinement.
[2] It is not disputed that the defendant departed from lawful custody of an officer. When the defendant broke from the line of men in the okra patch, he was in the lawful custody of Cleveland Deshotel, a security guard and field foreman.