411 So.2d 1068 (1982)
STATE of Louisiana
v.
Harlon FREEMAN and Tim Lee.
No. 81-K[A]-0944.
Supreme Court of Louisiana.
March 1, 1982.
*1069 Ike F. Hawkins, Jr., Shreveport, Claude R. Sledge, Mansfield, for defendants-relators.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., James L. Davis, Dist. Atty., Abbott J. Reeves, Herman Lawson, Asst. Dist. Attys., for plaintiff-respondent.
BLANCHE, Justice.[*]
After a bench trial, defendants, Harlan R. Freeman and Tim R. Lee, were each convicted on three counts of hunting deer at night and three counts of hunting or taking deer in closed season, both violations *1070 of R.S. 56:123(E)(2). The trial judge also found defendants guilty of hunting from a moving vehicle and hunting from a public road, violations of R.S. 56:124(1), as well as resisting an officer, a violation of R.S. 14:108. Since the aggregate sentences imposed exceeded six months imprisonment and were greater than $500 in fines, defendants appeal their convictions to this Court, raising three assignments of error. Because we find that two of these assignments have merit, defendants' convictions are affirmed in part and reversed in part.
Late one September evening, Allen Reynolds briefly observed what appeared to be a moving light in a field located a short distance from his residence. Several minutes after the light had ceased shining, Reynolds heard two gunshots originating from the same area as the light. Reynolds told his wife to report the occurrence to the Sheriff's Office while he drove in the direction of the gunshots to discover their source. His investigation uncovered a parked, black Ford truck with an extra set of lights positioned on top of the truck's cab. However, neither of these "spotlights" nor any of the truck's other lights were lit when Reynolds discovered the truck. This witness testified that, as he approached the black vehicle which was standing in the middle of a paved road, it took off "real fast". Even so, Reynolds was able to obtain the truck's license number and was able to observe two occupants, as well as some type of rifle, in the cab. Reynolds then returned to his house and relayed this information to the Sheriff's Office, which had already contacted Wildlife & Fisheries agents about the earlier gunshots heard by Reynolds.
When a black Ford truck later drove past Reynolds' residence at a high rate of speed, he immediately pursued it to solidify his belief that it was the same vehicle he had observed earlier that evening. The two vehicles were approached by a Wildlife & Fisheries agent, who was travelling in the opposite direction and had been given the suspect truck's description and license plate number by the Sheriff's Office. The agent made a U-turn with his marked vehicle and proceeded to follow the black truck while Reynolds abandoned his pursuit and returned home. At this point, the black Ford attempted to evade the agent by accelerating to an extremely high rate of speed. The agent unsuccessfully attempted to overtake the truck. While pursuing the fleeing vehicle, the Wildlife & Fisheries agent gave notice of his presence by turning on his red flashing light but, apparently, never sounded his siren.
Though the black truck successfully escaped this agent, it was eventually stopped by other agents as defendant attempted to pull into his driveway. The agents arrested the two defendants and a juvenile, and a search of the black Ford truck produced only a handgun. The next day, Wildlife & Fisheries agents returned to the area where Reynolds first observed the black Ford. A search of the landscape produced three recently shot deer and two "270" spent rifle shells. The gun which was used to kill the deer was never recovered.
Defendants were each charged with one count of hunting deer at night and hunting or taking deer out of season for each of the three deer found by the agents. The other charges against defendants arose out of their use of a moving vehicle for hunting purposes and their flight from Wildlife & Fisheries agents.

Assignment of Error Number 1
At the close of the state's case, defendants moved for a directed verdict of acquittal under the bills of information charging them with resisting arrest, a violation of R.S. 14:108. This statute provides in pertinent part that:
Resisting an officer is the intentional opposition or resistance to, or obstruction of, an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property, or to serve any lawful process or court order, when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.

*1071 The phrase `obstruction of' as used herein shall, in addition to its common meaning, signification and connotation mean:
(a) Flight by one sought to be arrested before the arresting officer can restrain him and after notice is given that he is under arrest.
By this assignment of error, defendants maintain that they were not notified that they were going to be arrested while being chased by the game warden. Upon reaching their destination, defendants admittedly offered no opposition, resistance or obstruction to the two other Wildlife & Fisheries units awaiting their arrival. Defendants urge that they were attempting to evade the witness who had heard the shots and had seen their truck parked on the road, and were not even aware that any report had been made to anyone acting in an official capacity.
Essential to a conviction under R.S. 14:108 is the defendant's knowledge of his arrest or impending detention. State v. Nix, 406 So.2d 1355 (1981).
As a result, defendants urge that an essential element of the crime was not established by the state and the trial judge erred in his refusal to grant their motion for a directed verdict of acquittal.
Agent Dalton Green was the first Wildlife & Fisheries agent to pursue the black Ford truck. Green stated that he initially approached defendant's pickup, which was being followed by Mr. Reynolds, from the opposite direction in which defendants were travelling. Both defendants' truck and Reynolds' vehicle were travelling at a slow rate of speed. Green testified that he slowed almost to a stop when he met them. He then slammed the brakes on, put his vehicle in reverse and "wheeled around right quick between the two vehicles." The agent recognized the truck from the license number and description that had been given to him. He was driving his game warden truck with the Wildlife sticker on the side and a red enforcement sign on it.
After Green turned in between the truck and the car following it, the truck took off at a high rate of speed. Green chased it but was unable to catch it, though he drove to 100 miles per hour at one point. Further, the agent testified that during the chase, defendants' truck cut across his path on two separate occasions.
It is our opinion that Agent Green's actions, coupled with defendants' reactions to his presence, clearly established defendants' knowledge that the agent was pursuing them in his official capacity, and intended to arrest them. See State v. Huguet, 369 So.2d 1331 (La.1979). In the instant case, Agent Green appropriately conveyed his intention to arrest defendants by turning to pursue them in his game warden truck with its red lights flashing. Defendants' flight, after Green appeared on the scene, supports our conclusion that the agent's alleged failure to sound his siren did not preclude defendants from being informed that they were being pursued by a law enforcement official attempting to make an arrest. Cf. State v. Nix, supra. Accordingly, this assignment of error is without merit.

Assignment of Error Number 2
Immediately before trial, defendants filed motions to quash four of the six bills of information charging them with hunting deer at night and four of the six bills of information charging them with hunting or taking deer in closed season. These twelve bills were based upon violations of R.S. 56:123(E)(2), which provides in pertinent part:
... Whoever violates the provisions of this section by the hunting or taking of deer after one-half hour after official sunset and before one-half hour before official sunrise or by the hunting or taking of deer or turkeys in closed season shall for the first offense be fined not less than $350 and not more than $500 and shall be imprisoned in jail for thirty days.
Defendants argued to the trial judge that the word "deer" as used in the above statute was intended to be plural and not singular, *1072 so they should have been charged with one count each of hunting deer at night and hunting or taking deer in closed season. The trial court rejected defendants' argument and denied their motion to quash. By this assignment of error, defendants take exception to the trial court's adverse ruling on the motion to quash.
Defendants urge that the trial judge, by finding both of them guilty of six violations of R.S. 56:123(E)(2), when in fact only two existed, subjected defendants to triple punishment for each of the two violations. In support of their position that "deer" should be interpreted in the plural form, defendants rely on C.Cr.P. art. 4, which provides the following general rule of construction:
Art. 4. Number; gender
Unless the context clearly indicates otherwise:
(1) Words used in the singular number apply also to the plural; words used in the plural number include the singular; ...
It is well established that criminal statutes are to be strictly construed and, in the absence of an express legislative intent, any doubt or ambiguity should be resolved in favor of lenity and not so as to multiply the penalty imposed. State v. Boniface, 369 So.2d 115 (La.1979); State v. Cox, 344 So.2d 1024 (La.1977). R.S. 14:3. We also recognize that the guarantee against double jeopardy found in the United States Constitution embodies a dual protectionprohibiting multiple prosecutions for the same offense, as well as multiple punishments for the same offense. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).
In the present case, the statute under which defendants were charged, R.S. 56:123(E)(2), prohibits the hunting of "deer" at certain proscribed times. Even without resort to the rule of construction found in C.Cr.P. art. 4, supra, it is evident that the use of the word "deer" without being proceeded by an article of grammar, such as "a", "an" or "the", is not limited to the singular, but also encompasses the plural form. See Webster's New International Dictionary, unabridged, 2nd Edition.
Further, laws in pari materia, or upon the same subject matter, must be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another. State v. Jewell, 345 So.2d 1166 (La.1977). As properly noted by appellants, a reading of the entire section of the Revised Statutes concerning conservation and protection of wild birds and game establishes that the legislature expressly made the taking of an individual game an offense under some provisions while, in other provisions, the distinction between singular and multiple takings is non-existent. Cf. R.S. 56:124(1).
We are of the opinion that the provisions of R.S. 56:123(E)(2) are limited to the event or occurrence involving the illegal taking of deer, regardless of the number of deer actually taken during the occasion. Had the legislative aim been to make the taking of each individual deer an offense, it would have clearly expressed that intent. To construe the statutory provisions otherwise would permit prosecutors to create multiple offenses without a legislative grant of authority.
For these reasons, we conclude that the trial court erred when it failed to sustain defendants' motion to quash the bills of information concerning the multiple charges of illegally hunting deer.

Assignment of Error Number 3
By this assignment of error, defendants contend that the trial court erred in not sustaining their motion for a directed verdict of acquittal for the charges related to hunting or taking game from a moving vehicle. In this connection, R.S. 56:124(1) provides, in pertinent part, that "No person shall ... hunt or take game quadrupeds or game birds from a moving land vehicle or aircraft." (emphasis added) Defendants urge that because the state failed to establish that their vehicle was actually moving at the time of the offense, an essential element of the crime was not established. To this, the trial judge responded:

*1073 I think what the Legislature intended is, when it said "Moving vehicle or aircraft", "Moving land vehicles" it contemplated one that was a mobile unit; not necessarily that it was in motion at the time the shot was fired.
However, this Court has held that where the words of a statute are clear and free from ambiguity, they are not to be ignored under the pretext of pursuing their spirit. State v. Gaines, 372 So.2d 552 (La. 1979). By the express language of R.S. 56:124(1), it is clear that only hunting from a vehicle which is moving is prohibited. Moreover, even if the statute were found to be ambiguous, such ambiguity would have to be construed in defendants' favor. State v. Gaines, supra; State v. Young, 357 So.2d 503 (La.1978). Clearly, had the legislature desired to prohibit the hunting or taking of deer from a movable vehicle, whether or not it was moving at the time of the offense, it could easily have expressed its intent. We conclude that the trial court erred in not granting defendants' motion for a directed verdict of acquittal as to the charges of hunting from a moving vehicle.
For the above reasons, defendants' convictions for resisting arrest and hunting from a public road are affirmed. Their convictions based on hunting from a moving vehicle are reversed. Further, it is ordered that defendants' multiple convictions based on hunting deer at night and hunting or taking deer in closed season be reduced to single convictions and the case is hereby remanded to the trial court for resentencing as to these convictions.
LEMMON, J., dissents in part and assigns reasons.
LEMMON, Justice, dissenting in part.
R.S. 56:123 prohibits the hunting or taking of deer (which includes the killing of deer) in closed season. See State v. Carpenter, 319 So.2d 355 (La.1975). When defendants killed three deer in closed season (although only moments apart), they committed three separate violations of the statute and subjected themselves to a penalty for each violation.
Arguably, the act of hunting deer in closed season is one act and therefore one violation, no matter how many deer there are in the woods during the hunt. But when the act of hunting in closed season results in the actual killing of a deer, one offense has been completed, and any additional killing constitutes a separate offense.[1]
I therefore dissent from setting aside defendants' conviction on two of the three counts of taking deer in closed season.
I also believe that the trial judge should have quashed the bill of information charging defendants with three counts of taking deer more than one-half hour after sunset. The statute's limitation of hunting to daylight hours obviously contemplates a limitation applicable only to open season, since hunting is illegal at all hours in closed season. The Legislature did not clearly intend to make one act (hunting at night in closed season) two separate offenses under the statute, and the prohibition against hunting at night in closed season should not be interpreted to permit multiple punishments.[2]
I therefore also dissent from not setting aside the convictions and sentences on all three counts of taking deer at night, because the trial judge had already imposed sentences on the three counts involving taking deer in closed season.
NOTES
[*] Judges Melvin A. Shortess, Burrell J. Carter and Felix H. Savoie, Jr. of the Court of Appeal, First Circuit, participated in this decision as Associate Justices Ad Hoc joined by Associate Justices Dennis, Blanche, Watson and Lemmon.
[1] Killing two deer in closed season is obviously more serious than killing one deer. A separate count should be allowed for each killing, subject to the district attorney's discretion as to how many counts to charge.
[2] R.S. 56:123 defines one offense which "may be committed by doing one or more of several acts, or by one or more of several means ... or with one or more of several results." C.Cr.P. Art. 480. Although the various acts, means or results may be charged conjunctively in a similar indictment under C.Cr.P. Art. 480, double jeopardy principles prohibit imposition of multiple punishments for the same offense. See North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).