449 So.2d 744 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
Earl W. WILLIAMS, Defendant-Appellant.
No. K83-1098.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1984.
Writ Denied June 8, 1984.
*745 Edwin S. Patout, Haik, Haik, Minvielle & Patout, New Iberia, for defendant-appellant.
*746 Glenn Foreman, Asst. Dist. Atty., Crowley, for plaintiff-appellee.
Before CUTRER, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
We granted writs on the application of the defendant, Earl W. Williams, who was convicted of operating a vehicle while intoxicated in violation of LSA-R.S. 14:98.
This is a case of first impression in the State of Louisiana. The defendant is charged with operating a vehicle while intoxicated in that he rode a horse on Louisiana Highway # 100 while under the influence of alcoholic beverages.
The defendant was riding a horse on La. Hwy. # 100, one and one-tenth mile west of Crowley on the evening of March 29, 1983 when he was involved in an accident with an automobile. The horse was shot and killed at the scene of the accident. After investigating the accident, police officers administered a P.E.I. test to the defendant and determined that he had a blood alcohol concentration of .12 percent. Defendant was charged with second offense O.W.I. in violation of LSA-R.S. 14:98.
The defendant stipulated that: he had previously been convicted of D.W.I. in 1980 in Iberia Parish; he was involved in an accident on March 29, 1983 at 7:40 p.m. while he was riding a horse; and he was given a P.E.I. test which results showed that he had a blood alcohol concentration of .12 percent.
After a hearing on the stipulated facts, the trial court narrowed the issue of the case to whether a horse constituted "other means of conveyance" under the provisions of LSA-R.S. 14:98, and concluded that the defendant had violated the provisions of the statute. He was found guilty of second offense O.W.I. and was sentenced to pay a $350 fine and to serve a term of six months in the parish jail. The court suspended five of the six months and ordered the defendant to serve thirty days in the parish jail.
It is elementary that criminal statutes are to be strictly construed. State v. Freeman, 411 So.2d 1068 (La.1982). Doubt as to the scope of criminal statutes must be decided in favor of the accused and against the State. State v. Brown, 378 So.2d 916 (La.1979). A crime is that conduct which is defined as criminal in the Criminal Code, or in other acts of the legislature, or in the constitution of this State. LSA-R.S. 14:7; State v. Pierre, 320 So.2d 185 (La.1975).
The jurisprudence is well established that this court has the right to take cognizance of a legal error patent on the face of the record. LSA-C.Cr.P. Art. 920(2) in pertinent part provides:
"The following matters and no others shall be considered on appeal:

* * * * * *

(2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence."
In accord: State v. Buttner, 411 So.2d 35 (La.1982); State v. De Generes, 194 La. 574, 194 So. 24 (1940).
The defendant urges that a horse is not a "means of conveyance" under the language of LSA-R.S. 14:98. We conclude that the defendant has not been charged with a crime punishable under the provisions of LSA-R.S. 14:98.
LSA-R.S. 14:98 provides in pertinent part:
"The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, vessel or other means of conveyance while under the influence of alcoholic beverages, narcotic drugs, central nervous system stimulants, hallucinogenic drugs or barbiturates. ..."
The rules of statutory construction require a court to consider that all expressions in the statute have meaning. State v. Fontenot, 112 La. 628, 36 So. 630 (1904); State v. Dozier, 258 La. 323, 246 So.2d 187 (1971). "Vehicle" is not self-explanatory in R.S. 14:98, otherwise it *747 would not have been necessary for the legislature to name "motor vehicle, aircraft, vessel or other means of conveyance" in the statute. Therefore, even if we could refer to the definition of "vehicle" in LSA-R.S. 32:1 (the opening paragraph of that statute restricts those definitions for use only in the Highway Regulatory Act), it would not illuminate the meaning of "other means of conveyance" because by the structure of R.S. 14:98 those two terms are not synonymous. Accordingly, we are faced with no statutory definition of "other means of conveyance".
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning of the law, shall be construed and understood according to such peculiar and appropriate meaning. LSA-R.S. 1:3.
Where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus. State v. Pabst Brewing Co., 128 La. 770, 55 So. 349 (1911). The words "motor vehicle," "aircraft," and "vessel" refer to inanimate objects of which the operation and control is dependent on the actions of the driver. A horse, on the other hand, is an animate object whose actions may not always be predicted with certainty. Plauche v. Consolidated Companies, 235 La. 692, 105 So.2d 269 (1958). A horse is ridden but not always controlled; it is not operated or driven.
When a statute is ambiguous or subject to two reasonable interpretations, the court can inquire into legislative aim and design for the purpose of determining legislative intent. Hebbler v. New Orleans Fire Department, 310 So.2d 113 (La.1975); State v. McCulloch, 126 So.2d 191 (La.App. 4th Cir.1961).
The introduction of the "driving while intoxicated" statute into the law closely parallels the growth of motorized transportation in society. The early legislative acts, Acts 78 of 1924 and 188 of 1936, simply denounced the operation of motorized vehicles while intoxicated; no other mode of transportation was mentioned. Act 143 of 1940 made it a crime in this state for "any person whether licensed or not, ... who is under the influence of intoxicating liquor or narcotic drug, to drive any vehicle upon any public road, highway or bridge of this State." (Emphasis added). These early acts clearly imply a legislative concern to regulate the use and operation of motor vehicles and to safeguard the people of this state from injury or death caused by drivers who operate their motorized vehicles while under the influence of intoxicating liquor or narcotic drugs.
Act 122 of 1956 redefined the crime of driving while intoxicated and was significant for two reasons: (1) the words "intoxicating liquor" in the statute were changed to "alcoholic beverages;" and (2) for the first time the term "other means of conveyance" was utilized in R.S. 14:98.
We have been unable to find any case law in this state interpreting the term "other means of conveyance." However, in their discussion of the term "alcoholic beverages" two Louisiana Supreme Court cases buttress our restriction of the term "other means of conveyance" to motorized vehicles by shedding light on the elements of the crime of operating a vehicle while under the influence of intoxicating beverages.
In State v. McAlister, 102 So.2d 444 (La.1958), the Louisiana Supreme Court was called upon to determine whether R.S. 14:98, as amended in Act 122 of 1956 (this was the same act which added the term "other means of conveyance" to the statute), denounced the same crime of operating a motor vehicle which existed prior to *748 the amendment. Speaking for a unanimous court, Justice Hawthorne concluded:
"The reason the statute [R.S. 14:98] defines the same crime before and after its amendment is that the essential elements of the crime are unchanged by the amendment, these essential elements being the operation of a motor vehicle while intoxicated." (Emphasis added)

Then in State v. Hightower, 238 La. 876, 116 So.2d 699 (1959), Chief Justice Fournet stated:
"... a person is intoxicated within the provisions of the statute [R.S. 14:98] when he does not have the normal use of his physical and mental faculties by reason of the use of alcoholic beverages (or narcotics), thus rendering such person incapable of operating an automobile in a manner in which an ordinarily prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions." (Emphasis added)

We are persuaded in our decision by the determination of the McAlister and Hightower courts that the use of a motorized vehicle is a pivotal element of the crime of operating a vehicle while intoxicated.
Penal laws are strictly construed, and cannot be added to by inference, and do not embrace cases not within their letter, even though within their spirit. State v. Reed, 188 La. 402, 177 So. 252 (1937); State In Interest of Ogletree, 244 So.2d 288 (La.App. 4th Cir.1971). Criminal laws are not to be extended by analogy. State v. Leak, 306 So.2d 737 (La.1975). Therefore had the redactors wished to include non-motorized vehicles in R.S. 14:98 they should have made specific mention of this class of vehicles in the statutory definition of operating a vehicle while intoxicated. Furthermore, the courts of this state have always followed the rule that they would not impute to a statute a meaning which would lead to an absurd result or extend to a statute a situation which the Legislature never intended to be covered thereby. Emmons v. Agricultural Insurance Company, 245 La. 411, 158 So.2d 594 (1963); Parish of Jefferson v. Stansbury, 228 So.2d 743 (La.App. 4th Cir.1969).
Although we are aware that the headings to the various sections of the Revised Statutes do not constitute part of the law, LSA-R.S. 1:14, they do provide some aid in the interpretation of legislative intent where language in the statute is unclear. Montelepre v. Edwards, 359 So.2d 1311 (La.App. 4th Cir.1978). We observe that the section in question is found in Part VI entitled "Offenses Affecting the Public Generally," in Sub-Part A, entitled "Offenses Affecting the Public Safety," under the heading "Driving Offenses." (Emphasis added.) As noted above, horses are neither driven nor operated; they are ridden.
Therefore we conclude that R.S. 14:98 does not define a crime which would encompass the riding of a horse while intoxicated. This interpretation gives meaning to the various aspects of the statute and is consistent with the rule of strict construction which applies to R.S. 14:98.
Likewise, should it be the public policy of this State to prohibit equestrians from riding horses while intoxicated, it is within the authority of the Legislature, not this court, to enact such a policy.
Accordingly we find that riding a horse upon a public highway does not constitute "other means of conveyance" under R.S. 14:98 and was error patent on the face of the record. Therefore, the defendant's conviction is reversed and his sentence is vacated with orders to discharge the defendant.
REVERSED AND RENDERED.