DOMENGEAUX, Judge.
Defendant, Edward Frank Rainey, charged with and convicted of simple escape in violation of La.R.S. 14:110(A), was sentenced to five years at hard labor, the sentence to run consecutively with the sentence defendant was previously serving. Defendant appealed the conviction, contending that the State failed to prove each and every element of the crime of simple escape.
The uncontradicted evidence at trial established that on Sunday, October 17, 1982, the defendant and several other prisoners were escorted from the Cameron Parish jail to the adjacent Cameron Parish courthouse to attend church services. While services were being conducted, the duty officer who had charge of the prisoners absented himself from the congregation in order to assist in the booking room on a different floor of the courthouse.
Some time during the service the defendant advised his fellow inmates of his intention to repair to the men’s lavatory. The defendant asked permission of no one as no person having authority to grant such permission was present. The defendant could have left the. premises through the unlocked courthouse doors; instead he proceeded to the women’s restroom in the courthouse basement, where he dislodged a screen from the unbarred window and fled. The defendant was apprehended after he drove a stolen vehicle onto Cameron Ferry 2.
The defendant contests his conviction arguing that he did not escape. It is the defendant’s contention that “in order for the jury’s verdict of guilt to stand, the defendant, EDWARD FRANK RAINEY, must have departed from the lawful custody of a law enforcement officer or from any place where he was being legally confined.” Since the defendant was neither bodily confined nor in physical custody, he argues that his act of leaving the courthouse does not constitute an escape as defined by law.
At the time of the. defendant’s arrest in 1982, La.R.S. 14:110 defined simple escape in pertinent part as follows:
“A. Simple escape is:
(1) The intentional departure, under circumstances wherein human life is not endangered, of a person imprisoned,* committed, or detained, from a place where such person is legally confined or from a designated area of a place where such person is legally confined or from the lawful custody of any law enforcement officer or officer of the Department of Corrections;
* * * '* - * • *
C. For purposes of this Section a person shall be deemed to be in the lawful custody of a law enforcement officer or of the Department of Corrections and legally confined when he is in a rehabilitation, unit, a work release program or any other program under the control of a law enforcement officer or the Department of Corrections.
D. The provisions of this Section shall be applicable to all penal, correctional, rehabilitational, work release centers and any and all prison facilities under the control of the sheriffs of the respective parishes of the state of Louisiana. *886 These prison facilities shall include, but are not limited to, parish jails, correctional centers, work release centers, and rehabilitation centers, and any and all facilities where inmates are confined under the jurisdiction and control of the sheriffs of the respective parishes.”
The defendant relies on the case of State v. Gaines, 372 So.2d 552 (La.1978). That case is, in pertinent part, dissimiliar to the one before us. At the time Gaines attempted his escape La.R.S. 14:110 required a departure from both legal custody and from a place of confinement to support a conviction for simple escape. The Gaines court found that the defendant’s departure from the okra patch where he was working did not constitute leaving a place of confinement since the defendant never exited the penitentiary grounds. Therefore, since one of the two conjunctive elements defining an escape was not present, Gaines could not be convicted of that crime.
La.R.S. 14:110 has been amended twice since Gaines. The 1981 amendment caused the statute to have disjunctive elements, allowing a conviction for simple escape if a person departs from either a place where he is legally confined or from lawful custody. Defendant’s alleged offense occurred under the statute as amended in 1981. (A second amendment was enacted in 1984 which did not alter the substance of the statute or the referred to disjunctive requirements.)
The defendant alleges that he did not vacate a place where he was legally confined. That phrase has been construed to mean “a place where the individual is actually confined, i.e., restrained by physical barriers sufficient to prevent him from going at large.” State v. Gaines, supra; State v. Marsh, 233 La. 388, 96 So.2d 643 (1957). No such barriers existed in the present case.
However, we need not decide the case on the confinement issue because we find the defendant intentionally departed from the lawful custody of a law enforcement officer. Although the duty officer was not physically present when the defendant left the religious service, he nonetheless had custody of the prisoners. Further, Section C of the 1981 version of La.R.S. 14:110, in effect at the time of these events, specified that a person is deemed in lawful custody and legally confined when he is participating in any program under the control of a law enforcement officer. Organized church services for inmates is such a program under the control of the duty officer.
The defendant departed from the lawful custody of the officer in charge of the church services which he was attending with complete awareness of his actions and with full knowledge that he was attempting to avoid the sentence which he was serving.
For the above and foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED.