I «KUHN, J.
Defendant, John Carr, was charged by bill of information with one count of third offense driving while intoxicated, a violation of La.R.S. 14:98. He pled not guilty. Thereafter, he filed a motion to quash the bill of information on grounds that it charged that he “operated a bicycle while under the influence of alcoholic beverages ...,” and that this conduct was not prohibited by La.R.S. 14:98. Following a hearing, the motion to quash was granted. The State files the instant appeal.

FACTS

The facts surrounding defendant’s arrest were revealed at a motion for preliminary examination and bond reduction hearing. Zachary Police Department Officer John Steele testified that he encountered defendant at approximately 6:30 a.m. on April 3, 1998. Officer Steele had been dispatched to investigate a report of a *1174 black male lying on the roadway after having fallen from a bicycle. When Officer Steele arrived at the scene, he saw defendant riding a bicycle in the middle of the outside lane of Highway 64, a four-lane highway. Vehicles were present in the area. Defendant swerved in the lane, lost control of the bicycle, and fell onto the shoulder of the roadway. As Officer Steele approached defendant, he detected a strong odor of alcohol on defendant’s breath and about his person. Officer Steele advised defendant of his Miranda rights and questioned him concerning the odor. Defendant insisted that he did not drink ever and that he absolutely had not been drinking that morning. However, defendant nearly fell down several times while speaking to Officer Steele. Officer Steele summoned EMS to check defendant for any diabetic problem. EMS was unable to detect any diabetic condition. Officer Steele performed a horizontal gaze nystagamus test on defendant which he failed. Officer Steele subsequently performed an intoxilizer test on defendant and his breath registered .299 grams percent alcohol.

\,MOTION TO QUASH

In its sole assignment of error, the State contends that the trial court erred in granting defendant’s motion to quash for failure to state a chargeable offense. The State argues that a bicycle is an “other means of conveyance” within the meaning of La .R.S. 14:98(A).
La.R.S. 14:98 criminalizes “operating a vehicle while intoxicated” and delineates the vehicles covered as follows:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
s¡: # iji sfc * *
The term “other means of conveyance” is defined neither in La.R .S. 14:98, nor in the definitional section of the criminal code. See La.R.S. 14:98; La.R.S. 14:2.
It is well established that criminal statutes are to be strictly construed. Courts are not empowered to extend by analogy the terms of a criminal provision to cover conduct not included within the definition of a crime. Any doubt as to the extent of the coverage of a criminal statute must be decided in favor of the accused and against the State. See State v. Smith, 97-0782, p. 4 (La.App. 1st Cir. 2/20/98); 708 So.2d 1166, 1168.
However, La.R.S. 14:3 also provides:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
The trial court expressed concern that the State’s argument, that a bicycle is an “other means of conveyance” within the meaning of La.R.S. 14:98(A), was contrary to what the majority of the public understood about the DWI statute. The court opined that La.R.S. 14:98(A) did not inform the public that bicycles were included, and in fact, arguably excluded them because it listed “motor vehicles.” The court expressed concern that the Lmajority of the public would have no idea that a criminal penalty attached to operating a bicycle while intoxicated, even if the operation was in one’s own back yard.
The trial court’s concerns stemmed from the fact that La.R.S. 14:98(A) is not limited in scope to operating a vehicle on state highways and has been interpreted to apply even in a “neighbor’s yard[,]” and from the principle that the law must provide fair warning of what conduct will be criminal. See State v. Layssard, 310 So.2d 107, 110 (La.1975); State v. Smith, 93-1490, pp. 5-6 (La.App. 1st Cir. 6/24/94); 638 So.2d 1212, 1215; State v. Amato, 96-0606, p. 4 (La.App. 1st Cir. 6/30/97); 698 So.2d 972, 979, writs denied, 97-2626 and 97-2644 (La.2/20/98); 709 So.2d 772.
*1175 The trial court correctly observed that “bicycles” are not specifically listed in La. R.S. 14:98(A). However, the issue is whether the provisions of La.R.S. 14:98(A) when given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provisions, encompass the operation of a bicycle while intoxicated. As noted by the State, a bicycle falls within the scope of La.R.S. 14:98(A) if it is an “other means of conveyance.”
The trial court’s concerns regarding fair warning also failed to provide a basis for excluding bicycles from the scope of La.R.S. 14:98(A). Persons owning property within a state are charged with knowledge of relevant statutory provisions affecting the control or disposition of that property. To afford notice, a legislature “need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply.” Fields v. State Through Dept. of Public Safety and Corrections, 98-0611, p. 22 (La.7/8/98); 714 So.2d 1244, 1259, (citing Texaco, Inc. v. Short, 454 U.S. 516, 532, 102 S.Ct. 781, 793, 70 L.Ed.2d 738 (1982)). The “other means of conveyance” language has been in La.R.S. 14:98(A) for over fifty years. It first appeared in La.R.S. 14:98(A) in 1942. 1942 La.Acts No. 43, § 1, Art. 98. In that year, the text of |sthe article concerning what type of vehicles were within the article’s scope was changed from “motor vehicle, of any nature whatsoever,” to “motor vehicle, aircraft, vessel, or other means of conveyanee[.]” Compare 1938 La.Acts No. 320, § 1, and 1942 La.Acts No. 43, § 1, Art. 98. Thus, the scope of the article was expanded to also include “aircraft, vessel, or other means of conveyance[.]” Professor Dale E. Bennett, one of the reporters who prepared the preliminary draft of the criminal code of 1942, commented that Article 98 “is not limited to automobiles, but also includes airplanes, boats, and all other means of conveyance.” See Dale E. Bennett, The Louisiana Criminal Code—a Comparison loith Prior Criminal Law, 5 La.L.Rev. 6, 6 n. 1 & 43 (1942); Robert M.W. Kempner, Bench and Bar, 15 Tul. L.Rev. 415, 415 n. 1 (1941). Webster’s II New College Dictionary 247 (1995) defines “conveyance” as “the act of conveying” and “convey” as “[t]o take or carry from one place to another.” A bicycle is a “means of conveyance” under this definition.
Defendant argues that if the legislature intended “other means of conveyance” to include a non-motor powered vehicle such as a bicycle, it would not have listed “motor vehicle” in La.R.S. 14:98(A). The article’s history discussed above answers this argument.
When the legislature chose to expand the scope of the article in 1942, it did so by adding to the existing class “motor vehicle,” which had been in the article since its inception in 1922, rather than by redrafting the entire vehicle scope clause anew. See 1922 La .Acts No. 132, § 1 & 1924 La.Acts No. 78, § 1 (“any form of motor vehicle, whatsoever”); 1936 La.Acts No. 188 (“motor vehicle of any nature whatsoever”); 1938 La.Acts No. 320, § 1 (“motor vehicle, of any nature whatsoever!)]”) A genuine construction of the added language, taken in context, reveals that the legislature’s intent was to expand La.R.S. 14:98(A) to encompass the operation of motorized and non-motorized “aircraft, | fivessel[s], or other means of conveyance,” since the legislature did not limit any of the added classes of vehicles by use of the word “motor.” The “motor” of “motor vehicle” identified a particular class of vehicles, and was not used in connection with a colon to describe a list of vehicles, all of which were motorized.[1]
Further, bicycle driving while intoxicated had been specifically criminalized prior to 1942. The 1942 version of La.R.S. 14:98(A) also repealed and superseded 1938 La.Acts No. 286, § 3, Rule 2(a), as *1176 amended by 1940 La.Acts No. 143, § 3, Rule 2(a), criminalizing “[a] habitual user of narcotic drugs or any person who is under the influence of intoxicating liquor or narcotic drugs[ ] [from] driving] any vehicle upon any public road, highway or bridge of this State.” The 1938 act had specifically defined “vehicle” as including “a bicycle or a ridden animal[.]” 1938 La.Acts 286, § 1(a).
In regard to the trial court’s concerns over whether or not the public would be aware that a criminal penalty attached to operating a bicycle while intoxicated, even if the operation was in one’s own back yard, we note that the instant offense did not occur in defendant’s back yard, but rather on Highway 64. The issue of whether or not La.R.S. 14:98(A) fairly warns of prosecution for driving a bicycle in a back yard was not before the court. The appropriate time to address that issue would be if and when it ever arose, but certainly not before.[2]-
The State argued before the trial court that the legislature must have had a reason to add the phrase “or other means of conveyance!,]” to the classes of vehicles listed in the DWI statute. However, the trial court rejected the argument, reasoning the DWI statute also listed particular classes of vehicles before stating “or other means of conveyance!,]” and |7that as a matter of statutory construction, where general words follow the enumeration of particular classes of persons or things, the general words must be construed as applicable only to persons or things of the same general nature or class as those enumerated. See State v. Pabst Brewing Co., 128 La. 770, 774-75, 55 So. 349, 351 (1911). The court stated that a bicycle is “human powered” whereas the specific classes of vehicles are generally powered by nonhuman means.
Ejusdem generis, the rule of statutory construction relied upon by the trial court, did not provide a basis for excluding bicycles from the scope of La.R.S. 14:98(A). The rule was explained in the Pabst Brewing Co. case as follows:
By the rule of construction known as ‘ejusdem generis,’ where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. The particular words are presumed to describe certain species and the general words to be used for the purpose of including other species of the same genus. The rule is based on the obvious reason that, if the Legislature had intended the general words to be used in their unrestricted sense, they would have made no mention of the particular classes. The words ‘other’ or ‘any other’ following an enumeration of particular classes are therefore to read as ‘other such like,’ and to include only others of like character. The doctrine of ejusdem generis, however, is only a rule of construction to be applied as an aid in ascertaining the legislative intent, and does not control where it clearly appears from the statute as a whole that no such limitation was intended. Nor does the doctrine apply where the specific words of a statute signify subjects greatly different from one another, nor where the specific words embrace all objects of their class, so that the general words must bear a different meaning from the specific words, or be meaningless.
Pabst Brewing Co., 128 La. at 775, 55 So. at 351.
The trial court’s application of ejusdem generis to La.R.S. 14:98(A) was flawed. The trial court reasoned that bicycles were human powered, that the particular classes of vehicles listed in La.R.S. 14:98(A) were non-human powered, and therefore, “other means of conveyance” could not include a human-powered type of vehicle. However, “watercraft” were added to La.R.S. 14:98(A) as a class of vehicles within the article’s scope by 1983 La] «Acts No. 634, *1177 § 1. Given that the legislature chose to list “watercraft” in addition to “vessel” in La. R.S. 14:98(A), we believe that a genuine construction of the class, taken in context, reveals that the legislature’s purpose was to include small vessels such as rowboats, pirogues, and canoes within the scope of La.R.S. 14:98(A). Since all of these watercraft are human-powered, ejusdem generis does not require that bicycles be excluded from “other means of conveyance!.]”
The trial court also relied upon State v. Guidry, 467 So.2d 156 (La.App. 3d Cir.1985) (Domengeaux, J., dissenting), the only Louisiana case to address the issue of whether the “other means of conveyance” language of the DWI statute encompassed bicycles.
In Guidry, 467 So.2d 156, the Third Circuit affirmed a lower court grant of a motion to quash. The lower court had granted the motion on the basis that a bicycle was not an “other means of conveyance” within the meaning of La.R.S. 14:98(A) because that term was limited to motorized vehicles under State v. Williams, 449 So.2d 744 (La.App. 3d Cir.), writ denied, 452 So.2d 172 (La.1984). The court in Guidry, 467 So.2d at 158, citing Williams, 449 So.2d at 748, noted that in Williams, it had concluded that “the use of a motorized vehicle is a pivotal element of the crime of operating a vehicle while intoxicated.”
Williams reached its conclusion citing State v. Hightower, 238 La. 876, 883, 116 So.2d 699, 702 (1959), and State v. McAlister, 234 La. 1028, 1034, 102 So.2d 444, 446 (1958), wherein the Louisiana Supreme Court had stated that the essential elements of the 1956 version of La.R.S. 14:98,[3] which contained the “other means of conveyance” language, were “the operation of a motor vehicle while intoxicated.” However, Hightower and McAlister were both automobile cases, and therefore, the interpretation of “other means 19of conveyance” was neither necessarily involved in the cases nor essential to their determinations. Thus, the statement from Hightower and McAlister, relied upon by Williams was obiter dicta.[4] Notably, subsequent to both Hightower and McAlister, the Louisiana Supreme Court, consistent with the text of La.R.S. 14:98(A), has held that “[i]n order to convict an accused of driving while intoxicated the state need only prove that (1) defendant was operating a vehicle or other conveyance; and (2) that defendant was under the influence of alcoholic beverages or some other type of drug.” State v. Fontenot, 408 So.2d 919, 921 (La.1981). (Emphasis added).
Williams also relied upon the history of La.R.S. 14:98(A), noting that the statute had “closely parallelled] the growth of motorized transportation in society!,]” and had originally been limited in scope to the operation of motorized vehicles while intoxicated. The court attempted to distinguish 1938 La.Acts No. 286, § 3, Rule 2(a) as amended by 1940 La.Acts No. 143, § 2, on the basis that the act criminalized “driving,” rather than “operating” “any vehicle!.]” However, the court failed to recognize that “vehicle” had been specifically defined as including “a bicycle or a ridden animal” in the 1938 act. 1938 La.Acts No. 286, § 1(a). See Williams, 449 So.2d at 747.
The State argues on appeal, that the legislature’s intent to include non-motor *1178 ized vehicles as “other means of conveyance” in La.R.S. 14:98(A) is evidenced by the fact that 1993 La.Acts No. 403, which added subsection “J” to the DWI statute, inserted the word “motorized” in front of conveyance when listing the classes of vehicles the subsection |10would apply to, while failing to amend the listing of vehicles in subsection (A) by adding the word “motorized” in front of conveyance in the listing of vehicles there.
La.R.S. 14:98(J) provides:
This Subsection shall be cited as the “Child Endangerment Law”. When the state proves in addition to the elements of the crime as set forth in Subsection A of this Section that a minor child twelve years of age or younger was a passenger in the motor vehicle, aircraft, watercraft, vessel, or other means of conveyance at the time of the commission of the offense, of the sentence imposed by the court, the execution of the minimum mandatory sentence provided by Subsection B, C, or D of this Section, as appropriate, shall not be suspended. For the fourth conviction, at least two years of the sentence shall be imposed without benefit of suspension of sentence.
The State’s argument is convincing. As La.R.S. 14:98 presently'stands, subsection (A) applies when the vehicle involved is a “motor vehicle, aircraft, watercraft, vessel, or other means of conveyance,” whereas subsection (J) applies when the vehicle involved is a “motor vehicle, aircraft, watercraft, vessel, or other means of motorized conveyance.” (Emphasis added.) The word “motorized” in subsection (J) is redundant unless the legislature was addressing something different in subsection (J) than it was in subsection (A). The title of 1993 La.Acts No. 403 expressed the act’s purpose, i.e., “to require a minimum mandatory sentence for child endangerment; and to provide for related matters.” A genuine construction of subsection (J), taken in context, reveals that the legislature’s purpose was to provide enhanced penalties in La.R.S. 14:98(J) for the conduct prohibited by La.R.S. 14:98(A) when the state was able to show “in addition to the elements of the crime as set forth in Subsection A,” the presence of two aggravating factors: (1) that a minor child twelve years of age or younger was a passenger in the vehicle involved; and (2) that the vehicle involved was motorized. Thus, La.R.S. 14:98(J) demonstrates that when the legislature chose to limit the scope of La.R.S. 14:98(J) to motorized vehicles, it did so luby using the language “motorized conveyance” in listing the scope of the subsection. Different, broader language, i.e., “conveyance,” appears in La.R.S. 14:98(A).
For the foregoing reasons, the State’s assignment of error has merit. Accordingly, the trial court’s granting of defendants motion to quash is reversed, and this matter is remanded for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.
WEIMER, J., concurs with reasons.

. Webster's II New College Dictionary 715 (1995) defines a "motor vehicle” as "[a] self-propelled wheeled conveyance not running on rails.”

. See footnote 4, infra.

. Williams erred in staling that the “other means of conveyance” language was first utilized in 1956. See Williams, 449 So.2d at 747. The "other means of conveyance” language was added to La.R.S. 14:98 by 1942 La.Acts No. 43, § 1, Art. 98.

. “It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.” Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399-400, 5 L.Ed. 257, 398 (1821).