474 So.2d 1003 (1985)
STATE of Louisiana
v.
Leon R. WOOLVERTON.
No. 85-K-133.
Court of Appeal of Louisiana, Fifth Circuit.
July 29, 1985.
John M. Mamoulides, Dist. Atty., Louise Korns, Dorothy A. Pendergast, Assistant Dist. Attys., Gretna, for plaintiff-appellee.
Leo R. Woolverton, in pro. per.
Before CHEHARDY, CURRAULT and DUFRESNE, JJ.
*1004 CURRAULT, Judge.
Defendant, Leon Woolverton[1], was charged by Bill of Information filed September 20, 1984 with breach of peace in violation of LSA-R.S. 14:103. We reverse.
The arraignment of defendant was set for November 5, 1984, and the defendant at that time filed several pleadings on his own behalf.[2] Mr. Woolverton filed a demand for jury trial of twelve persons. On the same date, he filed a demand for return of photographs and fingerprints taken of him, alleging that they were taken in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution. He further challenged the jurisdiction of the court over the subject matter and its capability to effect a remedy in the case.[3] He further averred that he had not submitted to the jurisdiction of the court.[4] Finally, he demanded recognition of and use of non-bar counsel.
In another document filed on November 5, 1984, entitled Arraignment and Plea, Mr. Woolverton stated that he could not enter a plea since he could not understand any charges which did not state a cause of action against him. Mr. Woolverton stated in the same document that since there was no cause of action stated, charges could not be brought against him under the common law. He specifically denied any jurisdiction by what he termed the executory chancery. He reiterated his demand for a twelve-person trial by jury if the matter proceeded to trial.
On November 7, 1984, defendant took writs to this court which were denied with reasons on December 4, 1984 on the demands presentedjurisdiction, trial by jury, right to use lay counsel at trial.[5]
On January 17, 1985, the defendant appeared and represented himself in the Second Parish Court for Jefferson Parish. After denial of additional defense motions, trial proceeded and the defendant was found guilty as charged. He was thereafter sentenced to Two Hundred Dollars ($200) fine and One Hundred Forty-Five Dollars ($145) court costs.[6] Defendant now seeks review of his conviction and sentence.[7]
On June 26, 1984, Deputies Bradley, Sanchez, Ragsdale and McClendon of the Jefferson Parish Police Department, while executing an eviction judgment at 2469 Regency Place in Gretna, Louisiana, were confronted by the defendant who allegedly raised his voice at the officers stating that the officers had no authority to remove property from the building. The officers twice unsuccessfully urged the defendant to quiet down; and, finally, Officer Bradley arrested him. The defendant was taken to the Jefferson Parish Correctional Center where he was fingerprinted and issued a breach of peace summons.
The defendant presented fifteen issues in support of his writ application to reverse his conviction and sentence. However, since we find reversal warranted for failure of the State to prove its case beyond a reasonable doubt, the appellant's other fourteen issues are thereby moot.
Defendant's conviction cannot stand unless, viewing the evidence in the light most *1005 favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. LSA-C.Cr.P. art. 821(B).
The Bill of Information charged defendant with violation of LSA-R.S. 14:103 in that:
"he did willfully and unlawfully disturb the peace by using obscene, abusive and threatening language, in such a manner as would foreseeably disturb and alarm the public,...."
LSA-R.S. 14:103 provides in pertinent part:
"A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:
* * * * * *
(2) Addressing any offensive, derisive or annoying words to any other person who is lawfully in any street, or other public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend or annoy him, or to prevent him from pursuing his lawful business, occupation or duty...."
In cases of this kind, the court must consider the fact that the First and Fourteenth Amendments to the U.S. Constitution require great care in the regulation of speech. Only "fighting words those which by their very utterance inflict injury and tend to incite an immediate breach of the peace," are punishable. White v. Morris, 345 So.2d 461 (La. 1977) citing Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Words not considered "fighting words" are constitutionally protected expressions. In addition, when such words are addressed to a police officer, the State must produce a stronger showing that the words are such as to incite the addressee to an immediate breach of the peace. City of New Orleans v. Lyons, 342 So.2d 196 (La.1977); Norrell v. City of Monroe, 375 So.2d 159 (La.App. 2d Cir.1979); White v. Morris, supra; State in Interest of W.B., 461 So.2d 366 (La.App. 2d Cir.1984).
As found by the court in Lyons, supra, police officers are expected to exercise more restraint than others and insulting language is less likely to cause a breach of the peace and fall within the "fighting words" exception to protected speech. See also Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 972, 39 L.Ed.2d 214 (1974).
At defendant's trial, the arresting officers testified as follows:
DEPUTY BRADLEY:
"A. Uh, I issued the summons because Mr. Woolverton was causing a disturbance, uh, by argumentative statements, uh, during a court ordered eviction at 2469 Regency Place in Gretna. Uh, Mr. Woolverton was complaining that, uh, the deputies, there were deputies on the scene, uh, had no right to remove the, uh, furniture and property from that address in that, uh, they had no constitutional rights and whatsoever. We advised Mr. Woolverton to lower his voice and calm his actions twice and upon his refusal he was placed under arrest and transported to Jefferson Parish, uh, Correctional Center. He was issued a summons and released." (Emphasis added)
DEPUTY SANCHEZ:
A. Well, when he drove up in his truck he, uh, got out the truck and started cursing wanting to know what right did we have to do this cause we had seized the house and we had the furniture (inaudible). And he wanted to know by what right do we have to do this. And, uh, Lieutenant Mack told him that, uh, `We have a court order. That's what right.' And, uh, he just kept on going. He wouldn't shut up. He was cursing and, uh, he just kept on going about it." (Emphasis added)
DEPUTY RAGSDALE:
A. When he stepped out the vehicle, he was in a truck, and when he stepped out he started raising about, um, all kind of furniture and stuff being on the lawn, *1006 which we are making a civil seizure of the home. He started raisinghe never thought it was right and he started using a little profanity and therefore Deputy Bradley placed the subject under arrest." (Emphasis added)
It was further testified that the officers twice unsuccessfully attempted to quiet the defendant down before placing him under arrest. However, the testimony was totally lacking in regard to the words used by defendant.
After reviewing the evidence and the law, we conclude that defendant's behavior did not constitute sufficient cause for his arrest for disturbing the peace. Consequently, as the State failed to prove beyond a reasonable doubt the elements of the crime charged, defendant is entitled to a reversal of his conviction.
For the foregoing reasons, the conviction and sentence of Leon R. Woolverton for violation of LSA-R.S. 14:103 is hereby reversed.
REVERSED.
NOTES
[1] The court notes that Mr. Woolverton is referred to as both Leon and Leo in the record, but utilizes the name Leon as set forth in the Bill of Information.
[2] Defendant demanded and received an oath of office from Judge Herbert Gautreaux.
[3] Defendant's basis for his claim of no remedy is that he cannot pay, if sentenced to pay a fine by the court, because only the "Standard Gold Dollar," rather than Federal Reserve Notes can be used as legal tender.
[4] Defendant additionally denied civil jurisdiction stating he should be tried by common law.
[5] Writ No. 84-K-593. Of the three demands, the jurisdiction issue was held premature until judgment in lower court.
[6] It should be noted that defendant's fine is excessive as the maximum fine under LSA-R.S. 14:103 is $100.
[7] Pursuant to LSA-C.Cr.P. art. 912.1, Mr. Woolverton sought review by application for supervisory writs. On February 28, 1985, writs were granted and defendant's case was ordered to be docketed by established appellate procedure.