839 So.2d 271 (2003)
STATE of Louisiana
v.
Grace ARMANT.
No. 02-KA-907.
Court of Appeal of Louisiana, Fifth Circuit.
January 28, 2003.
*272 Anderson Council, New Orleans, LA, for Defendant-Appellant, Grace Armant.
Harry J. Morel, District Attorney, J. William Starr, Assistant District Attorney, Hahnville, LA, for Plaintiff-Appellee, The State of Louisiana.
Panel composed of Judges JAMES L. CANNELLA, SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
SUSAN M. CHEHARDY, Judge.
Grace Armant appeals her convictions of disturbing the peace and resisting an officer. We find the evidence is sufficient, but there is a patent error affecting a substantial right of the defendant. We pretermit consideration of other assignments and remand for an evidentiary hearing.
*273 On November 7, 2001 the St. Charles Parish District Attorney charged Grace Armant with two misdemeanors in two separate bills of information. In No. 66348, she was charged with disturbing the peace, a violation of La.R.S. 14:103. In No. 66349 she was charged with resisting an officer, a violation of La.R.S. 14:108. At arraignment she entered a plea of not guilty.
On April 8, 2002, the defendant was tried and found guilty as charged on both counts. Immediately after the trial the court sentenced the defendant.
With regard to the conviction of disturbing the peace, the court imposed a sentence of 90 days in the parish prison, suspended, placed the defendant on two years' inactive probation, and imposed a fine of $100, with special conditions of probation. With regard to the conviction of resisting an officer, the trial judge imposed a sentence of six months in the parish prison, suspended, placed the defendant on two years' inactive probation, and imposed a $500 fine, with special conditions of probation. Both fines were suspended, provided the defendant complied with the special conditions of probation and paid the court costs, which were made concurrent.
Defense counsel requested that the court note his intention to take supervisory writs. The trial court gave the defendant ten days to apply for a writ. On April 17, 2002, nine days after sentencing, the defendant filed a motion for appeal.

JURISDICTION
Although this case involves misdemeanor convictions, the matter is appealable because it was triable by a jury (see below).[1] However, this appeal is appears to be untimely because the motion for appeal was filed more than five days after the defendant's sentence.[2]
The defendant was sentenced on April 8, 2002. Through counsel, the defendant gave oral notice at the sentencing hearing of her intention to file a writ application, without mentioning an appeal. Her written motion for appeal was filed on April 17, 2002 nine days later and, thus, was untimely.
When a defendant fails to move for an appeal within the time allotted by La.C.Cr.P. art. 914, the conviction and sentence become final and the defendant loses the right to obtain an appeal by simply filing a motion for appeal. State v. Counterman, 475 So.2d 336, 338 (La.1985). The appropriate procedural vehicle for the defendant to seek exercise of her right to appeal after the legal delay has expired is by application for post-conviction relief. La.C.Cr.P. arts. 924-930.7; Counterman, 475 So.2d at 339; State v. Bowen, 00-175 (La.App. 5 Cir. 7/25/00), 767 So.2d 806, 807.
In State v. Egana, 99-1127 (La.App. 5 Cir. 2/29/00), 758 So.2d 881, 883, this Court found that the pro se defendant's "Notice of Intention to Apply for Supervisory Writ of Certiorari," filed more than five days after sentencing, was not a motion for appeal and was untimely even if considered *274 as a motion for appeal. The Louisiana Supreme Court, however, granted writs for this Court to reconsider its opinion in light of the principles applicable to pro se filings. State ex rel. Egana v. State, 00-2351 (La.9/22/00), 771 So.2d 638. The supreme court also instructed us to consider whether defendant's motion for appeal, filed four months later, qualified as an application for post-conviction relief under Counterman.
We could distinguish the Supreme Court's decision in Egana because Egana involved a pro se litigant and this case involves a defendant represented by counsel. However, we prefer to construe the defendant's oral notice of intent to apply for supervisory relief as an oral notice of appeal.
The Louisiana Supreme Court has recognized that appeals are favored in the law and has disapproved of the dismissal of appeals on "hypertechnical" grounds. "Appeals are favored in law, and appeals should not be dismissed on hypertechnical interpretations of a statute which can be reasonably interpreted to preserve the appeal, particularly in the absence of any claim of prejudice by the opposing party." State v. Bunnell, 508 So.2d 55 (La.1987); see also, State v. Gilbert, 99-2338 (La.4/20/00), 758 So.2d 779.
In this matter, the State neither objected nor claimed prejudice at any of the relevant times: when the defense indicated the intent to file a writ application, or when the defendant's written motion for appeal was filed, or when the case came before this Court in this appeal.
Rather than dismissing the appeal and remanding the case for defendant to seek reinstatement of her appeal rights by application for post-conviction relief, we construe defendant's oral notice of intention to seek supervisory relief as an oral notice of appeal. Absent a claim of prejudice by the State, such a construction is in the interest of judicial economy and honors the premise that the law favors the right to appeal.

FACTS
At trial, the State's sole witness was Deputy Olivier, who testified to the following facts:
On October 25, 2001, at approximately 12:00 a.m., Deputy C. Olivier responded to complaints of loud music and illegal parking near the G & G Restaurant and Lounge, at the intersection of Luling Avenue and Paul Mallard Road in St. Charles Parish. When he arrived at the scene, Deputy Olivier observed that cars were parked on Luling Avenue beneath "no parking" signs.
Olivier entered the restaurant to inform the manager or owner that the vehicles had to be moved. Olivier intended to have the vehicles moved voluntarily, rather than to issue citations or to have the vehicles towed. Olivier went inside the lounge and asked for the manager. Grace Armant came outside.
According to Olivier, he attempted to explain the situation about the illegal parking, but Armant told him she "didn't care what the sign said" and that the "no parking" signs were illegally erected by the parish because the land was owned by the railroad company. Olivier said Armant "became more irate" and began to curse and yell, calling the deputy a "fucking tourist" and saying he didn't know who he was talking to. Armant informed Olivier that she had worked for the sheriff's department for several years and threatened to sue if the "ongoing harassment continued."
Olivier told Armant that he was not there to argue, only to have the vehicles moved, and he asked Armant to calm *275 down. According to Olivier, Armant was yelling "loud enough for the people on the other side of Luling Avenue to hear." Olivier testified,
So at that point, I said, "Look, this isn't going anywhere. I can't let this go." I told her you're under arrest for disturbance. I asked her to put her hands behind her back. She said I'm not going to jail. She started to back up. She started to back up, I reached out to take a hold of her hand, at which she pushed off of me. That's okay. I was able to gain control, put her arm behind her back. With the help of Deputy Oubre, we were able to handcuff Ms. Armant.
Olivier said that after being arrested Armant initially cooperated, but "started jumping up and down" while walking to the police unit. Olivier had to "physically put her against the unit in an attempt to restrain her." Olivier acknowledged that he "may have used bad language at one point. It was a pretty heated debate."
On cross-examination, Deputy Olivier acknowledged that Armant initially offered to let the security guards write down the license plate numbers and make an announcement that these vehicles needed to be moved. Olivier denied that he refused that offer, but admitted he told Armant that the cars would be towed if they were not moved by the owners. Olivier also admitted that Armant "was talking back to [him] until [he] had to tell her to shut up or she was going to jail." Olivier decided to arrest Armant after "10 to 15 minutes of her yelling obscenities in the middle of Luling Avenue." Olivier again acknowledged that he was "sure [he] used some bad language [himself]."
According to Oliver, Armant pushed him once and tried to "intimidate" him. Olivier denied that he had his hand around Armant's throat. He said he was not aware of any bruises on her legs or her face that occurred when he pushed the "side of her head into the side of the car" after arresting her.
According to Olivier, when he pointed out the "no parking" signs Armant became uncooperative. He acknowledged that he did not know whether Armant told the security guards not to record the license plate numbers or whether they decided not to do so on their own.
Grace Armant testified on her own behalf. The defendant said that her daughter owns the G & G Restaurant and Lounge and Armant helps manage it. According to Armant, it was approximately 11:30 or 12:00 at night when one of the security guards told her that an officer was outside and wanted to speak to one of the managers or the owner. When Armant went outside and asked what the problem was, the deputy informed her that the vehicles were parked illegally. Armant said she acknowledged that the vehicles were illegally parked and told the deputy that she had opposed making it a "no parking" zone, but the council had overruled her opposition. Armant told the officer the lounge's two security guards would take down the information from the license plates and would have the D.J. make an announcement inside the lounge.
According to Armant, she began to tell Deputies Olivier and Oubre about the fact that the railroad owned the property where the "no parking" signs were placed. Armant pointed out the depot and asked Deputy Olivier, "Where are you from, Olivier?" Olivier told her he was from New Orleans. Armant explained to him that the parish had erected the signs on the railroad's property, that she had opposed the parish's actions at the council meeting, but that there was nothing she could do since the council had not agreed with her position. Armant said she remarked that *276 Deputy Olivier did not know about this history because he was not from St. Charles Parish and that Deputy Oubre was too young to know about it.
Armant said she continued talking to Deputy Olivier, but "from one word to the other word" he wanted her to "shut up all of a sudden." Armant responded that she was not shutting up: "You sent for me. I'm running my business. You disturbing me. This cannot be a one-sided conversation. You sent for me. We are going to talk. If you are finished, I'll leave."
According to Armant, Olivier said that if the cars weren't moved, he was going to write tickets and have them towed. Armant said that Olivier "changed all of a sudden" and told her that if she "didn't shut up he was going to place [her] under arrest." Armant initially believed he was joking about arresting her and pulled her hand back when the deputy reached for her. When she realized that Olivier "meant business," she gave him her hand "peacefully."
Armant testified that as they walked to the police unit, Deputy Olivier pushed her instead of allowing her to walk. She told him not to push her, that she was not drunk or injured and that she could walk. Then, according to Armant, the officer "slammed" or "threw" her on top of the police car, twisting her neck, scratching her back, and bruising her leg. Armant denied that she cursed at Deputy Olivier and said she could not recall whether Olivier used profanity that night.
After the testimony of Olivier and the defendant, the trial judge found the defendant guilty as charged.

ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred in finding the petitioner guilty as charged based on evidence which is insufficient to support a finding of guilty beyond a reasonable doubt and which violates the petitioner's due process rights and the dictates of Jackson v. Virginia.

The defendant contends that the evidence is insufficient to support her convictions for disturbing the peace and for resisting an officer. Specifically, defendant argues that the State failed to prove beyond a reasonable doubt that her conduct in refusing to obey Deputy Olivier's command to "shut up" constituted disturbing the peace. Further, defendant contends that her arrest was unlawful and she had the right to resist an unlawful arrest.
The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under Jackson, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See also, State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1292-1293; State v. Holmes, 98-490 (La.App. 5 Cir. 3/10/99), 735 So.2d 687, 690.
Disturbing the Peace
In the present case, the State stipulated that it was relying on paragraph A(2) to prosecute the defendant for disturbing the peace. La.R.S. 14:103(A)(2) states:
A. Disturbing the peace is the doing of any of the following in such manner as would foreseeably disturb or alarm the public:

. . .
(2) Addressing any offensive, derisive, or annoying words to any other person who is lawfully in any street, or other *277 public place; or call him by any offensive or derisive name, or make any noise or exclamation in his presence and hearing with the intent to deride, offend, or annoy him, or to prevent him from pursuing his lawful business, occupation, or duty....
In State v. Bissett, 451 So.2d 181 (La. App. 1 Cir.1984), the court affirmed the defendant's convictions for disturbing the peace and resisting an officer. The defendant sought emergency treatment at the emergency room at night. Frustrated at her inability to receive treatment, she began screaming and cursing "in a boisterous and provocative manner" at hospital personnel and a person entering the hospital. A police officer called to the scene observed this conduct. The defendant continued the behavior while in the parking lot of the hospital, directing abusive language and a threat of physical violence toward the officer himself.
The Bissett court found that the evidence was sufficient to support the defendant's conviction for disturbing the peace. 451 So.2d at 184. In view of its findings on the sufficiency issue, the court concluded that the officer had probable cause to arrest the defendant and, therefore, she had no right to resist the arrest. 451 So.2d at 185.
In contrast, in State v. Woolverton, 474 So.2d 1003 (La.App. 5 Cir.1985), this Court found the evidence insufficient to support the defendant's conviction for disturbing the peace. The criminal charges arose out of an eviction proceeding. The Woolverton court found that the arresting officers' testimony concerning the defendant's "argumentative statements" and complaints that the officers had no right to remove his furniture, his unspecified "cursing," and his use of "a little profanity" did not show the police had probable cause to arrest the defendant for disturbing the peace. 474 So.2d at 1005-1006.
In Woolverton there also was testimony that the officers twice unsuccessfully attempted to quiet the defendant down before placing him under arrest. However, the officers did not specify the words used by the defendant. The court concluded that the defendant's behavior did not "constitute sufficient cause for his arrest for disturbing the peace." Because the State failed to prove the elements of the crime beyond a reasonable doubt, the court reversed the defendant's conviction and sentence. Woolverton, 474 So.2d at 1006.
In reaching its conclusions, the Woolverton court discussed the types of speech that are protected by the United States Constitution:
In cases of this kind, the court must consider the fact that the First and Fourteenth Amendments to the U.S. Constitution require great care in the regulation of speech. Only "fighting wordsthose which by their very utterance inflict injury and tend to incite an immediate breach of the peace," are punishable. Words not considered "fighting words" are constitutionally protected expressions. In addition, when such words are addressed to a police officer, the State must produce a stronger showing that the words are such as to incite the addressee to an immediate breach of the peace. [Citations omitted.]
Woolverton, 474 So.2d at 1005. [P]olice officers are expected to exercise more restraint than others and insulting language is less likely to cause a breach of the peace and fall within the fighting words exception to protected speech. Id.
Other courts also have addressed words that fall within the purview of protected speech. In State in the Interest of W.B., 461 So.2d 366 (La.App. 2 Cir.1984) the *278 Court held the defendant addressing the officer as a "Gdwhite mf" was constitutionally protected speech and did not provide probable cause for the defendant's arrest for disturbing the peace. 461 So.2d at 368-369.
The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Hotoph, 99-243 (La.App. 5 Cir.11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066. It is not the function of the appellate court to assess credibility or reweigh the evidence.
In this case, by finding the defendant guilty as charged, the trial court obviously credited the deputy's testimony over Armant's. Deputy Olivier's testimony established that Ms. Armant was yelling and cursing in the street at midnight while he was attempting to perform his lawful duty of moving illegally parked cars. Although the only profanity Deputy Olivier described was Armant's calling him a "fucking tourist," we conclude that Armant's words and actions constituted disturbing the peace.
Had the only evidence against Armant been the use of the profane phrase described by Deputy Olivier, the evidence would have been insufficient to support this conviction because profane words are constitutionally protected speech unless they are "fighting words." Woolverton, 474 So.2d at 1005. The instant case is distinguishable from Woolverton, however, in that the profanity was specified. It is further distinguishable in that Deputy Olivier testified that Armant was yelling loud enough to be heard across the street, whereas the principal focus in Woolverton was the defendant's use of unspecified profanity to the officers. This case more resembles Bissett, in which the defendant created a disturbance in a public place at night.
Based on the foregoing, we conclude that the evidence is sufficient to support the conviction of disturbing the peace.
Resisting an Officer
The defendant next contends that the evidence is insufficient to support her conviction for resisting an officer because her arrest for disturbing the peace was unlawful. La.R.S. 14:108 defines resisting an officer as follows, in pertinent part:
A. Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity.
B. (1) The phrase "obstruction of" as used herein shall, in addition to its common meaning, signification, and connotation mean the following:
. . .
(b) Any violence toward or any resistance or opposition to the arresting officer after the arrested party is actually placed under arrest and before he is incarcerated in jail.
In State v. Johnson, 534 So.2d 529, 531 (La.App. 5 Cir.1988), this Court emphasized, "Resisting an officer contains three elements: the intentional resistance, opposition, or obstruction of an officer authorized by law to make a lawful arrest, when the offender knows or should know the officer arresting is acting in his official capacity." La.R.S. 14:108.
It is undisputed that the defendant, Grace Armant, knew Deputy Olivier was a police officer acting in his official capacity.
*279 The only question is whether Armant was lawfully arrested for disturbing the peace.
An arrest is lawful when it is based on probable cause. State v. Raheem, 464 So.2d 293, 296 (La.1985). Probable cause to arrest exists when the facts and circumstances within an officer's knowledge, and of which he has reasonable, trustworthy information, are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, 1331, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996).
Because we found sufficient evidence to support the arrest for disturbing the peace, the arrest for resisting an officer is based on probable cause. Deputy Olivier's testimony, which the judge apparently credited, established that Armant resisted Olivier's efforts to handcuff her after he told her she was under arrest and that Olivier required Deputy Oubre's assistance to subdue Armant. Based on the foregoing, the evidence is sufficient to justify the conviction of resisting an officer in violation of La.R.S. 14:108.

PATENT ERROR
We next must address a patent error that we find requires remand of this matter: specifically, the lack of a jury trial waiver.[3] As noted above, our appellate jurisdiction extends only to cases that are triable by a jury. Robinson, supra at n. 1.
La.C.Cr.P. art. 779(A) provides, "A defendant charged with a misdemeanor in which the punishment, as set forth in the statute defining the offense, may be a fine in excess of one thousand dollars or imprisonment for more than six months shall be tried by a jury of six jurors, all of whom must concur to render a verdict."
When misdemeanor offenses are charged by separate bills of information and the aggregate penalty of the offenses exceeds six months imprisonment or a fine of $ 1,000.00, the defendant is entitled to a jury trial. State v. Hornung, 620 So.2d 816, 817 (La.1993).
An exception to this rule is found in La.C.Cr.P. article 493.1, which provides as follows:
Whenever two or more misdemeanors are joined in accordance with Article 493 in the same indictment or information, the maximum aggregate penalty that may be imposed for the misdemeanors shall not exceed imprisonment for more than six months or a fine of more than one thousand dollars, or both.
In State v. Hornung, 613 So.2d 638 (La. App. 5 Cir.1992), affirmed, 620 So.2d 816, 817 (La.1993), the defendant was charged with three misdemeanor offenses in two separate bills of information. The offenses were consolidated for trial on the State's motion. In a patent error review on the appeal, this Court determined that the defendant was entitled to a jury trial, but the record did not contain a waiver of that right. We reasoned that Article 493.1 did not apply because at least two of the consolidated offenses had not been joined in the same bill of information. We concluded that the total potential punishment for the consolidated charges exceeded six months imprisonment and, thus, the defendant was entitled to a jury trial. Hornung, 613 So.2d at 640.
*280 In affirming this Court's decision, the Louisiana Supreme Court stated:
The decision of whether to charge an accused in one bill of information with multiple offenses, or in separate bills of information for each offense, is within the discretion of the district attorney alone. It is only when the district attorney exercises that discretion and joins the offenses in the same bill of information that the defendant is entitled to the reduced sentencing exposure of Article 493.1. Likewise, it is only when the district attorney joins the offenses in accordance with Article 493 in the same indictment or information that the state may avoid a jury trial. [Citations omitted.]
Hornung, 620 So.2d at 817.
In State v. Gardner, 458 So.2d 1016, 1017 (La.App. 3 Cir.1984), the court held that the defendant was entitled to a jury trial when charged with resisting an officer and disturbing peace in separate bills of information, where the charges were tried together without being formally consolidated. "Although there was no mention of consolidation, under such circumstances, the charges are considered as if they were joined...."
In the present case, the defendant was charged in separate bills of information with disturbing the peace and resisting an officer. Disturbing the peace is punishable by imprisonment of 90 days or a fine of $100.00 or both. La.R.S. 14:103(A). Resisting an officer is punishable by imprisonment of not more than six months or a fine of $500.00 or both. La. R.S. 14:108(C). Because the aggregate punishment for the two offenses exceeds six months, the defendant had a right to be tried by a jury.
Although the record does not reflect that either party moved to consolidate the two bills of information, as was the case in Hornung, the two cases were at all times treated as though they were consolidated. The defendant was arraigned on both cases at the same time, each minute entry contains the numbers of the two cases, the cases were tried together, a single verdict was rendered, and the defendant was sentenced on both cases at the same time. Thus, the charges should be considered consolidated for all practical purposes. Gardner, 458 So.2d at 1017.
The record is silent, however, regarding whether the defendant waived her right to a jury trial. La.C.Cr.P. art. 780 requires that the defendant be advised of the right to a jury trial and that a defendant, once so informed, may waive the right. Waiver of the right to a jury trial is never presumed. State v. McCarroll, 337 So.2d 475, 480 (La.1976); State v. Herrera, 98-677 (La.App. 5 Cir. 2/10/99), 729 So.2d 75, 80.
As a general rule, Louisiana courts have set aside the defendant's conviction and remanded for a new trial in the absence of a valid jury trial waiver. See, State v. Williams, 404 So.2d 954 (La.1981); State v. Miller, 517 So.2d 1113 (La.App. 5 Cir. 1987), writ denied, 523 So.2d 1335 (La. 1988).
In State v. James, 94-720 (La.App. 5 Cir. 5/30/95), 656 So.2d 746, however, this Court took a different approach regarding the absence of a jury trial waiver. With one judge dissenting, we remanded the case for an evidentiary hearing to determine whether the defendant knowingly and intelligently waived his right to trial by jury. The majority reasoned that remand was a better approach than reversal, as follows:
Under the present circumstances, wherein James had competent counsel and was tried without objection by a judge, we believe that the interests of *281 justice are better served by a remand instead of reversals.
Accordingly, we remand for an evidentiary hearing to determine whether James knowingly and intelligently waived his right to a jury trial. If the evidence shows that James did not execute such a waiver, the district judge is instructed to set aside the convictions and grant a new trial. If the waiver was properly made, the appeal should be transferred back to this Court for review of this determination and for review of several errors patent concerning the sentences.
James, 94-720 at p. 2, 656 So.2d at 747.
In State v. Nanlal, 97-0786 (La.9/26/97), 701 So.2d 963, the Louisiana Supreme Court also chose to remand for a similar evidentiary hearing, citing this Court's decision in James. Thus, the Louisiana Supreme Court has implicitly approved the procedure of remanding for an evidentiary hearing rather than the past procedure of setting aside the conviction and remanding for a new trial. We have followed the procedure established in Nanlal.[4]
Therefore, we conclude this case must be remanded to the trial court for an evidentiary hearing to determine whether the defendant knowingly and intelligently waived her right to a jury trial.
In view of our ruling, we need not discuss the remaining assignments of error or any further patent errors.

DECREE
For the foregoing reasons, we find that there was sufficient evidence to support the convictions and we order this case remanded to the trial court for an evidentiary hearing to determine whether the defendant knowingly and intelligently waived her right to a jury trial. If the evidence shows that the defendant did not knowingly and intelligently waive her right to a jury trial, the trial court is instructed to set aside the defendant's convictions and sentences and grant her a new trial. If, however, the trial judge determines that the waiver was properly made, the appeal should be transferred back to this Court for review of that determination and any remaining assignments of error not covered in this opinion. See State v. Vortisch, 00-67 (La.App. 5 Cir. 5/30/00), 763 So.2d 765, 770.
REMANDED.
NOTES
[1] Under La. Const. Art. 5, Section 10, the appellate jurisdiction of this Court extends to criminal cases that are triable by a jury. See also, La.C.Cr.P. art. 912.1; State v. Robinson, 94-864 (La.App. 5 Cir. 3/15/95), 653 So.2d 669.
[2] La.C.Cr.P. art. 914(B) provides that a motion for appeal in a criminal case must be made no later than either five days after rendition of the judgment or ruling from which the appeal is taken, or five days from the ruling on a motion to reconsider sentence filed pursuant to Article 881.1, should such a motion be filed.
[3] We were required to consider the sufficiency of the evidence before discussing the jury trial waiver because a defendant who prevails on the issue of the sufficiency of the evidence may be entitled to retrial on a lesser-included offense if the State's evidence was insufficient. See State v. Morris, 615 So.2d 327 (La.1993).
[4] See, State v. Pierre, 98-1123 (La.App. 5 Cir. 4/14/99), 733 So.2d 674, 679; State v. Brual, 98-657 (La.App. 5 Cir. 1/26/99), 726 So.2d 1112, 1114; State v. Westmoreland, 98-437 (La.App. 5 Cir. 10/14/98), 721 So.2d 951; State v. Stoltz, 98-235 (La.App. 5 Cir. 8/25/98), 717 So.2d 1243.