WHIPPLE, C.J.
The defendant, Burt Howard Vogel, was charged by bill of information on count one with operating a vehicle while *803 intoxicated, second offense, a violation of LSA-R.S. 14.98(A), and on count two with operating a vehicle while his license was suspended, revoked, or cancelled, a violation of LSA-R.S. 32:415. The defendant pled not guilty as to both counts. The defendant filed a written motion to quash the bill of information,[1] asserting that the facts presented are not sufficient to find that he was operating a "motor vehicle, aircraft, watercraft, vessel, or other means of conveyance." See LSA-R.S. 14:98(A)(1). After a hearing, the trial court granted the defendant's motion to quash the bill of information.[2] The State now appeals, assigning error to the trial court's ruling on the motion to quash. For the following reasons, we hereby reverse the ruling of the trial court granting the defendant's motion to quash and remand for further proceedings.
STATEMENT OF FACTS
As the trial court granted the motion to quash, trial did not take place and the facts were not developed in this case. The following details were derived from the bill of information, the transcript of the July 28, 2017 hearing at which the defendant initially attempted to withdraw his not guilty plea, and the defendant's memorandum in support of the motion to quash. On May 14, 2017, the defendant was arrested after Trooper Justin Leonard was called to the scene in reference to an individual driving a riding lawnmower on Highway 55 in Terrebonne Parish.[3] In his report, Trooper Leonard stated that he performed a standardized field sobriety test on the defendant. The officer reported that he performed the horizontal gaze nystagmus test, which the defendant failed. Trooper Leonard reported that he did not perform any other test due to the defendant's level of impairment. Trooper Leonard then placed the defendant under arrest and transported him to the Terrebonne Parish Criminal Justice Complex. Once at the complex, the defendant voluntarily submitted to a breathalyzer test. The report stated that the defendant's breath sample results showed that he had a 0.258 % BAC. The defendant was booked on the instant charges. The bill of information further indicates that the defendant was previously convicted of operating a vehicle while intoxicated on May 4, 2009, in Terrebonne Parish.
TIMELINESS OF STATES APPEAL
In his reply brief, the defendant argues, in part, that the State's appeal should be dismissed as untimely, citing State v. Gray, 98-2902 (La. 5/7/99), 740 So.2d 1291, State v. Hall, 2009-1 (La. App. 5th Cir. 5/12/09), 28 So.3d 281, 286-287 (on rehearing), writ denied, *804 2009-2660 (La. 10/19/10), 48 So.3d 270 (per curiam), and State v. Garrus, 2002-1940 (La. App. 4th Cir. 6/4/03), 849 So.2d 796, 799. At the outset, we note the defendant has not properly raised this issue before this court, since he failed to file a motion to dismiss the State's appeal. State v. Smith, 97-0782 (La. App. 1st Cir. 2/20/98), 708 So.2d 1166, 1167, n.2. Moreover, after considering the defendant's argument as follows, we exercise our discretion to treat the State's oral and written notice of intent to seek supervisory writs as a timely motion for appeal.
Pursuant to LSA-C.Cr.P. art. 914, in pertinent part, a motion for an appeal may be made orally in open court or by filing a written motion with the clerk and must be made no later than thirty days after the rendition of the judgment or ruling from which the appeal is taken. In this case, the hearing and ruling on the defendant's motion to quash took place on September 13, 2017. In open court, immediately after the ruling, the State objected to the ruling, gave oral notice of the intent to "file a writ," and filed written notice of the intent to seek supervisory review on September 19, 2017, six days after the ruling on the motion to quash. The return date was originally set for October 16, 2017. On October 13, 2017, the State filed a request for an extension of the return date, which was signed and granted by the trial court on October 17, 2017, extending the return date to November 16, 2017. The State subsequently filed a motion for appeal on November 15, 2017, sixty-three days after the ruling on the motion to quash. The trial court granted the motion for appeal, originally set the lodging date for January 26, 2017,[4] and extended the lodging date to February 24, 2018. The State's appeal was filed in this court on February 8, 2018.
As noted above, in support of his claim that the State's appeal is untimely, the defendant relies on the holding in Garrus. In Garrus, the State orally noted its intent to seek writs immediately after the trial court granted the defendant's motion to quash. The docket master indicated that on the same day the trial court quashed the proceedings, the court allowed the State until May 29, 2002 to take a writ. On that day, the State filed a notice of intent to file an appeal, followed by a motion for appeal on June 10, 2002, which the trial court granted. The State argued that by orally noting its intent to seek writs the day the motion to quash was granted, it adhered to the time constraints of LSA-C.Cr.P. art. 914 by placing the defense on notice that it would seek review of the judgment. Further, the State maintained that neither the trial court nor the defense objected to or claimed prejudice when the State orally noticed its intent to seek a "writ" or when it filed a notice of intent to appeal, albeit a late notice. The State further argued that appeals are favored in the law and should not be dismissed on hypertechnical interpretations of a statute which can be reasonably interpreted to preserve the appeal, particularly in the absence of any claim of prejudice by the opposing party. Garrus, 849 So.2d at 798 (citations omitted). The Fourth Circuit dismissed the State's appeal in light of the Louisiana Supreme Court's ruling in Gray, also cited by the defendant herein. Garrus, 849 So.2d at 799.
In State v. Gray, 98-0347 (La. App. 4th Cir. 10/21/98), 766 So.2d 550, vacated, 98-2902 (La. 5/7/99), 740 So.2d 1291, three *805 defendants were charged with various offenses. On June 24, 1996, the trial court refused to grant the State a continuance and the State dismissed the charges against each defendant. The State thereafter reinstated the charges against the defendants. The three defendants each filed motions to quash. Gray, 766 So.2d at 550-551. On November 19, 1996, the trial court granted the motions to quash following a hearing. As noted by the Fourth Circuit, the transcript of the hearing was not in the record on appeal. Gray, 766 So.2d at 551. As the court also noted, the State objected to the granting of the motion to quash at the time of the ruling. The trial court gave the State one month to file for a writ of certiorari, i.e., until December 19, 1996. On December 20, 1996, one day after the due date for filing the writ and thirty-one days after the ruling on the motion to quash, the State filed a motion for appeal, which was granted.
On appeal in Gray, the defendant contended that the State's motion for an appeal was untimely because it was filed thirty-one days after the motion to quash was granted. Citing Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4, the Fourth Circuit stated, "The defense fails to argue that the State's motion for an appeal was untimely, and thus it will not be considered. Errors that are not briefed are considered abandoned." Gray, 766 So.2d at 551, n.1. In vacating the Fourth Circuit's decision in Gray, and reinstating the judgment granting the motion to quash, the Louisiana Supreme Court concluded, "[t]he district court's judgment became final when the state failed to take a timely appeal from the disputed ruling. State v. Veazey, 337 So.2d 1163 (La. 1976)." Gray, 740 So.2d 1291.[5] Notably, there is no indication in Gray that the State, in objecting at the time of the ruling on the motion to quash, stated its intention to seek review.
In Veazey, the State filed a motion for appeal over four months after the order to quash the defendant's indictment was recorded in the court minutes. The State argued that its appeal was timely because it was taken within fifteen days of the date on which it received written notice of the trial judge's ruling. The Louisiana Supreme Court disagreed, noting:
It is the state's contention that when a matter is taken under advisement, written notice of the judgment or ruling subsequently rendered should be sent to the interested parties. The state further argues that the time for appealing from such judgments or rulings should commence running only from the date of receipt of notice thereof. We are asked to engraft these rules, borrowed from the Code of Civil Procedure ( Code Civ.P. arts. 1911, 1913 and 2123 ), onto the clear statutory language of Code Crim.P. art. 914. This we cannot do. While the provisions suggested by the state might indeed prove beneficial supplements to the Code of Criminal Procedure, that is a matter which addresses itself to the legislature. In the absence of statutory authority to the contrary, we will continue to follow the directive of article 914 that motions for appeal must be made no later than fifteen days after *806 the rendition of the judgment or ruling from which the appeal is taken.
Veazey, 337 So.2d at 1164.
The Fifth Circuit in Hall relied upon Veazey in finding untimely an appeal filed by the State on October 6, 2008, forty-six days after the trial court's rendition of the judgment on August 21, 2008 granting a motion to quash based on double jeopardy. Hall, 28 So.3d at 282-283. On rehearing, the State contended that the court overlooked an oral motion for appeal made by the State on September 15, 2008, and supplemented the record with a transcript of the proceedings held on said date. That day, the prosecutor stated to the trial judge in open court "we objected [to the trial court's August 21, 2008 ruling], and note our intent to seek writs, in the event that I have to." The prosecutor subsequently asked for a "return date on [the writ]." The trial court responded "September 29th." Hall, 28 So.3d at 283-284.
Thus, the State contended on rehearing that the prosecutor's use of the phrase "intent to seek writs" on September 15, 2008 was sufficient to constitute an oral motion for appeal. While the State's written motion for appeal was filed forty-six days after the ruling on the motion to quash, the State's oral notice of "intent to seek writs" was made only twenty-four days after the rendition of the judgment. As acknowledged by the Fifth Circuit on rehearing, the court's original appellate opinion erroneously quoted from an outdated version of LSA-C.Cr.P. 914 (the version in effect at the time of Veazey, the case that was relied upon by the court) which provided that a motion for appeal "must be made no later than fifteen days after the rendition of the judgment or ruling from which the appeal is taken." Hall, 28 So.3d at 282-283. Thus, at that time, the court did not consider the applicable version of the statute providing a thirty-day time constraint for the filing of an appeal. Nonetheless, on rehearing, the Fifth Circuit upheld its previous finding that the State's appeal was untimely filed and dismissed the appeal, relying on Garrus and Gray. Hall, 28 So.3d at 286-287.
Following the State's application for supervisory review in Hall, the Louisiana Supreme Court declined to treat the State's notice to seek a writ as a timely filed motion for appeal. In doing so, the Court noted, "the trial judge set a return date for the writ, by which the State did not comply." The Court then held, "Therefore, even if we were to treat the notice to seek a writ as a timely-filed motion for appeal, the State did not adhere to the lesser period fixed by the trial judge." State v. Hall, 2009-2660 (La. 10/19/10), 48 So.3d 270, 271 (per curiam ).
While the Fifth Circuit in Hall and Fourth Circuit in Garrus relied on Gray in dismissing the appeals in those cases, we find the instant case distinguishable from Gray. Unlike the instant case, in Gray and Veazey there was no indication that the State gave oral notice of the intent to seek review on the date of the rendition of the ruling at issue. Further, unlike the situation in Hall, the State in this case complied with the return dates and extensions set by the trial court.
Rather, we find that the instant case is analogous to the Fifth Circuit's decision in State v. Armant, 2002-907 (La. App. 5th Cir. 1/28/03), 839 So.2d 271, 274. Therein, the defendant was sentenced immediately after being convicted on April 8, 2002. At that time, the defendant's counsel "requested that the court note his intention to take supervisory writs" without mentioning an appeal and the trial court gave the defendant ten days to apply for a writ. Armant, 839 So.2d at 273. Counsel for the defendant filed a written motion for appeal on April 17, 2002, nine days after sentencing.
*807 At the time Armant was decided, LSA-C.Cr.P. art. 914(B) provided that a motion for appeal had to be made no later than five days after rendition of the judgment from which the appeal was taken or five days from the ruling on a motion to reconsider sentence filed pursuant to LSA-C.Cr.P. art. 881.1. Thus, if the Armant defendant's oral notice of intention to seek supervisory relief constituted an oral motion for appeal, the motion for appeal would have been timely. If the defendant's intention to file a "writ application" did not constitute a motion for appeal, the written motion was untimely. The Fifth Circuit chose to construe the defendant's oral notice to seek supervisory relief as an oral motion for appeal. Armant, 839 So.2d at 274. The court noted that the State neither objected nor claimed prejudice in that case. Likewise, we note that the defendant in this case did not object below and has not alleged any prejudice in this case.
Additionally, in Smith, this court did not dismiss the State's appeal although the State's motion for appeal was filed outside of the five-day period prescribed in the applicable version of the statute at the time. In that case, on January 15, 1997, the trial court granted the defendant's motion to quash counts one and two of the bill of information. The State initially sought review of that judgment through an application for supervisory writs. However, on February 6, 1997, the State obtained an order for an out-of-time appeal and, on the same day, filed a motion to dismiss its writ application. This court granted the motion to dismiss. On appeal, the defendant argued that the State's appeal was untimely because it was not taken within five days of the trial court's January 15, 1997 ruling. This court initially noted that the defendant did not properly raise the issue since he failed to file a motion to dismiss the State's appeal. Moreover, in finding no merit in the defendant's argument, this court stated, in pertinent part, "the State filed its writ application within two days of the trial court's ruling, which put defendant on notice the State intended to seek review of the court's ruling." Smith, 708 So.2d at 1167, n.2.
Finally, we note that the Louisiana Supreme Court has recognized that courts should "look through the caption of pleadings in order to ascertain their substance and to do substantial justice." State v. Sanders, 93-0001 (La. 11/30/94), 648 So.2d 1272, 1284. cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996) (citation omitted). Herein, we exercise our discretion to treat the State's oral notice of its intent to file a writ, given in open court on the date of the rendition of the ruling granting the motion to quash and its subsequent written notice of intent to seek supervisory review, filed six days after said ruling, as a timely motion for appeal. See In re Howard, 541 So.2d 195, 197 (La. 1989) ; Armant, 839 So.2d at 274 ; Smith, 708 So.2d at 1167 n.2. Thus, we decline to dismiss the appeal and will address the State's sole assignment of error.
ASSIGNMENT OF ERROR
In its sole assignment of error, the State contends that the trial court erred in granting the motion to quash the bill of information in this case. The State claims that there is no dispute that the defendant was operating a riding lawnmower on a public highway while intoxicated. Thus, the only question is whether a riding lawnmower is a motor vehicle or other means of conveyance under LSA-R.S. 14:98(A)(1). Comparing State v. Carr, 99-2209 (La. 5/26/00), 761 So.2d 1271, State v. Guidry, 467 So.2d 156 (La. App. 3d Cir. 1985), which each involved the use of bikes and State v. Williams, 449 So.2d 744 (La. App. 3d Cir.), writ denied, *808 452 So.2d 172 (La. 1984), which involved a defendant riding a horse, the State argues that a motorized object such as a riding lawnmower, tractor, or dirt bike should be considered a conveyance if it is used as a means of transportation. In arguing that the defendant was using a motorized object as a means of conveyance in this case, the State notes that the defendant allegedly informed the arresting officer that he was returning home from a family reunion.
The State notes that Missouri courts have interpreted their statutes to include non-traditional vehicles and specifically found a riding lawnmower when driven on a highway to constitute a motor vehicle in Stonger ex rel. Stonger v. Riggs, 85 S.W.3d 703, 707-08 (Mo. App. W.D. 2002). The State also notes that a riding lawnmower is not properly equipped with lights or signals to be safely operated on a public highway, thereby increasing the danger to the driving public. Noting that an accident was allegedly caused by the defendant's operation of the riding lawnmower, the State contends that the danger to the driving public was evident in this case. The State also argues that the intent of LSA-R.S. 14:98 is to prevent such accidents caused by impaired drivers and suggests that all motor vehicles or other means of conveyances should be included in the statute. Because the riding lawnmower in this case was motorized and allegedly used as a means of getting from one place to another, the State submits that the defendant can be charged with operating a motor vehicle or other means of conveyance while intoxicated.
At the hearing on the motion to quash, in the memorandum in support of the motion, and in his reply brief on appeal, the defendant argues that the term "other means of conveyance" is ambiguous in the statute. As support, the defendant cites Carr, wherein the Louisiana Supreme Court determined that the term "other means of conveyance" does not include a non-motorized bicycle. Carr, 761 So.2d at 1278. The defendant argues that the reasoning used in Carr should likewise apply in this case to decline to extend LSA-R.S. 14:98 to a riding lawnmower. The defendant concedes that the riding lawnmower involved in this case was motorized, unlike the bicycle in Carr. The defendant contends that the lawnmower is not, however, a means of conveyance, in contrast to the bicycle in Carr. The defendant also cites Williams, wherein the Third Circuit Court of Appeal declined to extend "other means of conveyance" to the riding of a horse, although the horse was being used as a means of conveyance at the time of an accident. Williams, 449 So.2d at 748. Thus, the defendant argues that the trial court was correct in granting the motion to quash, concluding that a motorized riding lawnmower is not a "means of conveyance" for the purposes of LSA-R.S. 14:98.
In granting the defendant's motion to quash, the trial court was not convinced that the existence of a motor is dispositive, noting, for example, that there is no requirement in the statute that a watercraft have a motor. The trial court concluded that a "motor vehicle" means a car, truck or motorcycle, not a lawnmower. The trial court further contended that to consider a riding lawnmower as any "other means of conveyance" would subject someone who is cutting grass on his or her own property while consuming alcohol to being in violation of the statute and concluded that this was not the legislature's intent. Noting the principle of construing a criminal statute against its expansion if there is any ambiguity, the trial court quashed the bill of information.
A trial court's ruling on a motion to quash should not generally be reversed in the absence of a clear abuse of the trial *809 court's discretion. See State v. Odom, 2002-2698 (La. App. 1st Cir. 6/27/03), 861 So.2d 187, 191, writ denied, 2003-2142 (La. 10/17/03), 855 So.2d 765. A trial court's legal findings, however, are subject to a de novo standard of review. See State v. Smith, 99-0606, 99-2015, 99-2019, 99-2094 (La. 7/6/00), 766 So.2d 501, 504. In this case, the trial court's ruling on the motion to quash is based on a legal finding and, therefore, is subject to de novo review. See State v. Vernell, 2010-0990 (La. App. 1st Cir. 12/22/10), 68 So.3d 553, 555-556. writ denied, 2011-1912 (La. 2/3/12), 79 So.3d 1025.
It is well established that criminal statutes are to be strictly construed. Courts are not empowered to extend by analogy the terms of a criminal provision to cover conduct not included within the definition of a crime. State v. Smith, 97-0782 (La. App. 1st Cir. 2/20/98), 708 So.2d 1166, 1168. The principle of lenity is premised on the idea that a person should not be criminally punished unless the law provides a fair warning of what conduct will be considered criminal. The rule is based on principles of due process that no person should be forced to guess as to whether his conduct is prohibited. Carr, 761 So.2d at 1274. Thus, any doubt as to the extent of the coverage of a criminal statute must be decided in favor of the accused and against the State. See Smith, 708 So.2d at 1168. Nonetheless, LSA-R.S. 14:3 also provides:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.
Louisiana Revised Statute 14:98 criminalizes "[o]perating a vehicle while intoxicated" and delineates the vehicles covered as follows:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when any of the following conditions exist:
* * *
Persons owning property within a state are charged with knowledge of relevant statutory provisions affecting the control or disposition of that property. To afford notice, a legislature "need do nothing more than enact and publish the law, and afford the citizenry a reasonable opportunity to familiarize itself with its terms and to comply." Fields v. State Through Dept. of Public Safety and Corrections, 98-0611 (La. 7/8/98), 714 So.2d 1244, 1259 (citing Texaco, Inc. v. Short, 454 U.S. 516, 532, 102 S.Ct. 781, 793, 70 L.Ed.2d 738 (1982) ).
The history of Louisiana's DWI law was detailed by the Louisiana Supreme Court in Carr, 761 So.2d at 1276-1277. Louisiana first criminalized DWI in 1922. See 1922 La. Acts No. 132. Act 132 made it a misdemeanor "for any person, while in an intoxicated condition to operate any form of motor vehicle, whatsoever." 1922 La. Acts. No, 132, §§ 1-2. (Emphasis added). Thus, when the first DWI statute was enacted, it clearly applied to motorized forms of transportation. In 1924 and 1926, the legislature added an additional element to the DWI crime created in Act 132. In particular, the legislature added "injury to person or property" as an element. See 1924 La. Acts No. 78; 1926 La. Acts No. 48. Thus, following the 1924 and 1926 amendments, the mere act of operating a vehicle while intoxicated was no longer an offense-the offender had to injure someone or cause property damage to another in order to face criminal penalties. Given that injury *810 or property damage was a requisite, the legislature also made the crime a felony. See 1924 La. Acts No. 78, § 2; 1926 La. Acts No. 48, § 2. As in the original Act 122 of 1932, the offense defined by Act 48 applied to motorized forms of transportation. See 1926 La. Acts No. 48, § 1 ("a motor vehicle of any nature whatsoever") & § 3 (repealing Act No. 132 of 1922, as amended by 1924 La. Acts No. 78). (Emphasis added). Carr, 761 So.2d at 1276.
In 1936, the legislature expanded the law to once again criminalize the mere act of operating a motor vehicle while intoxicated, i.e., DWI was once again a crime even if no injury or property damage occurred. See 1936 La. Acts No. 188. The mere act of operating a vehicle while under the influence was a misdemeanor offense, and if injury or property damage to another should result, the offense was a felony. See 1936 La. Acts No. 188, §§ 2-3. Just as with all prior versions of the statute, the offense expressly applied to motorized forms of transportation. See 1936 La. Acts No. 188, § 1 ("a motor vehicle of any nature whatsoever"). (Emphasis added). This series of statutes and amendments pertaining to DWI (hereinafter referred to collectively as "the Original DWI Statute") was in force until the adoption of the Criminal Code, and Article 98 thereof (currently LSA-R.S. 14:98 ), in 1942. Carr, 761 So.2d at 1276.
However, the Original DWI Statute was not the exclusive means by which one could incur criminal penalties for operating a vehicle while intoxicated. In 1928, the legislature enacted another DWI provision, separate and apart from the legislative scheme that had been progressing since 1922 with the Original DWI Statute. This new DWI proscription, entitled "Persons Under the Influence of Intoxicating Liquor or Narcotic Drugs," was part of Act 296 of 1928, enacted to regulate traffic on the public highways of the state, and read as follows: "It shall be unlawful ... for any person ... who is under the influence of intoxicating liquor ... to drive any vehicle upon any highway within this State." 1928 La. Acts No. 296, § 3 (emphasis added). Furthermore, Act 296 defined a "vehicle" as follows: "Every device in, upon or by which any person or property is or may be transported or drawn upon a public highway, excepting devices moved by human power ... provided that for the purposes of [ ] this Act, a bicycle or a ridden animal shall be deemed a vehicle." 1928 La. Acts No. 296, § 2(a). Thus, beginning in 1928, Louisiana had two separate, coexistent statutory criminal schemes for punishing DWI-the Original DWI Statute, which was applicable anywhere and pertained to motor vehicles, and the new Act 296 of 1928, applicable only on highways and expressly deeming a bicycle or a ridden animal to be a vehicle. Carr, 761 So.2d at 1276-1277.
Act 296, including its DWI provision, was subsequently subsumed into the Highway Regulatory Act of 1938. 1938 La. Acts No. 286. Throughout each version of the Highway Regulatory Act, the legislature maintained the DWI provision that it had introduced in Act 296. This series of DWI provisions (hereinafter referred to collectively as "the Highway DWI Statute") coexisted with the Original DWI Statute and, like the Original DWI Statute, was in effect until the legislature adopted the Criminal Code, and its Article 98, in 1942. 1942 La. Acts No. 43. In addition to enacting Article 98, Act 43 also repealed both the Original DWI Statute and the Highway DWI Statute. 1942 La. Acts No. 43, § 2 (repealing 1938 La. Acts No. 286, §§ 3, Rule 2(a), 12; 1938 La. Acts No. 320; 1940 La. Acts No. 143, § 2). Carr, 761 So.2d at 1277.
*811 The "other means of conveyance" language has been in LSA-R.S. 14:98(A) for over fifty years. It first appeared in LSA-R.S. 14:98(A) in 1942. 1942 La. Acts No. 43, § 1, Article 98. In that year, the text of the article concerning the type of vehicles within the article's scope was changed from "motor vehicle, of any nature whatsoever," to any "motor vehicle, aircraft, vessel, or other means of conveyance[.]" Compare 1938 La. Acts No. 320, § 1, and 1942 La. Acts No. 43, § 1, Article 98. The scope of the article was expanded to also include "aircraft, vessel, or other means of conveyance." Thus, the term "other means of conveyance" was introduced into Louisiana's DWI statutory scheme when the legislature abandoned the dual criminal statutory scheme, i.e., the Original DWI Statute and the Highway DWI Statute, and replaced them with a single DWI statute, Article 98. Professor Dale E. Bennett, one of the reporters who prepared the preliminary draft of the criminal code of 1942, commented that Article 98 "is not limited to automobiles, but also includes airplanes, boats, and all other means of conveyance." See Dale E. Bennett, The Louisiana Criminal Code-A Comparison with Prior Criminal Law, 5 La. L. Rev. 6, 6 n.1 & 43 (1942); Robert M.W. Kempner, Bench and Bar, 15 Tul. L. Rev. 415, 415 n.1 (1941).
In interpreting "other means of conveyance," the Third Circuit in Guidry affirmed a lower court's grant of a motion to quash. The lower court had granted the motion on the basis that a bicycle was not an "other means of conveyance" within the meaning of LSA-R.S. 14:98(A)(1) because that term was limited to motorized vehicles under Williams (wherein the court, as noted above, held that a horse was not a means of conveyance). In affirming the trial court's grant of the motion to quash in Guidry, the Third Circuit noted that in Williams, it had concluded that "the use of a motorized vehicle is a pivotal element of the crime of operating a vehicle while intoxicated." Guidry, 467 So.2d at 158, citing Williams, 449 So.2d at 748.
Subsequently, in Carr, the Louisiana Supreme Court addressed the meaning of the term "other means of conveyance" and concluded that in the absence of an express statement, the legislature's intent to apply LSA-R.S. 14:98 to bicycles is at least ambiguous. Under principles of lenity, the Court interpreted the statute in the manner favorable to the defendant and, therefore, concluded that the term "other means of conveyance," as used in LSA-R.S. 14:98, does not include a bicycle. Carr, 761 So.2d at 1278.
Turning to the present case, it is undisputed that the device being operated by the defendant herein had a motor, the device was self-propelled as opposed to human-powered, and the device was inanimate. Thus, unlike Guidry, Williams, and Carr, in the instant case, this court is required to interpret the term "any motor vehicle" in addition to the term "other means of conveyance." The words "motor vehicle," "aircraft," and "vessel" refer to inanimate objects of which the operation and control is dependent on the actions of the driver.[6] Williams, 449 So.2d at 747. The Traffic Code, itself entitled "Motor Vehicles and Traffic Regulation," provides a definition for "motor vehicle" as well as "vehicle." "Motor vehicle," in pertinent part, means every vehicle which is self-propelled. LSA-R.S. 32:1(40). "Vehicle," in pertinent part, means every device by *812 which persons or things may be transported upon a public highway or bridge, except devices moved by human power or used exclusively upon stationary rails or tracks. LSA-R.S. 32:1(92). Webster's II New College Dictionary 247 (1995) defines "conveyance" as "[t]he act of conveying" and "convey" as "[t]o take or carry from one place to another."
In this case, the basis of the prosecution is that the defendant was operating a motorized device, the riding lawnmower, to transport or carry himself from one place to another, on a highway or the shoulder thereof.[7] Considering the plain words of the statute and consistent with the legislative history, we find that the legislature intended to protect the public from the type of actions alleged in this case. The legislative history implies a legislative concern to regulate the use and operation of any motor vehicle or other means of conveyance and to safeguard the people of this State from injury or death caused by drivers who operate their self-propelled vehicles while under the influence of intoxicating liquor or narcotic drugs. Thus, while there clearly may be circumstances where the provisions of this statute would not apply to the operation of a riding lawnmower, whether considered a "motor vehicle" or "other means of conveyance," the provisions of LSA-R.S. 14:98, when given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provisions, encompass the operation of a riding lawnmower while intoxicated under the particular facts alleged in this case. We find that the State's assignment of error has merit.
Accordingly, the trial court's granting of the defendant's motion to quash is hereby reversed, and this matter is remanded for further proceedings consistent with the views expressed herein.
RULING GRANTING DEFENDANT'S MOTION TO QUASH REVERSED; REMANDED FOR FURTHER PROCEEDINGS.
McCLENDON, J., concurs and assigns reasons.

Prior to filing the written motion to quash, the defendant attempted to withdraw his not guilty pleas and plead guilty as charged. Upon the defendant's oral motion to quash in open court, the trial court did not accept the defendant's guilty pleas.

While the defendant's written motion to quash made reference only to count one, at the hearing, he orally moved to include count two in the motion to quash. The trial court's ruling granting the motion was applicable to both counts. On appeal, the State has not assigned as error or briefed the trial court's granting of the motion to quash as to count two. Accordingly, we decline to address this issue.

At the July 28, 2017 hearing, the defendant claimed that he was driving the riding lawnmower on the shoulder of the highway. The State, however, contended that a witness indicated that the defendant was weaving northbound in the southbound lane, that the lawnmower's lights were off at one point, and that the riding lawnmower collided with a motorcycle on the highway as the motorcycle approached from the opposite direction. The defendant denied seeing or colliding into a motorcycle.

The setting of the lodging date as January 26, 2017 appears to have been in error, given that the year "2017" had been typed into the unsigned order, and the trial court merely filled in the month and day. Also, January 26, 2017 had already passed as of the date of signing the order.

At the time that Veazey was decided in 1976, Article 914 allowed fifteen days after the ruling to file an appeal. Article 914 was amended by 1982 La. Acts No. 143, § 1 to permit five days to file an appeal following a trial court ruling. Article 914 was again amended by 1993 La. Acts No. 490, § 1 to provide an alternative time for filing of appeal, five days from the ruling on a motion to reconsider sentence. Finally, Article 914 was amended again by 2003 La. Acts No. 949, § 1, the version of the statute that became effective on August 15, 2003, and is still in effect, to permit thirty days to file an appeal following a trial court ruling.

By comparison, in Williams, the Third Circuit further stated, "A horse, on the other hand, is an animate object whose actions may not always be predicted with certainty. A horse is ridden but not always controlled; it is not operated or driven." Williams, 449 So.2d at 747 (internal citation omitted).

AS alleged by the State, the bill of information indicates that the defendant was operating a motor vehicle "on a public highway," as opposed to a yard. In considering a motion to quash, a court must accept as true the facts contained in the bill of information and in the bills of particulars and determine, as a matter of law and from the face of the pleadings, whether or not a crime has been charged. While evidence may be adduced, such may not include a defense on the merits. The question of factual guilt or innocence of the offense charged is not raised by the motion to quash. State v. Thomas, 2012-0470 (La. App. 1st Cir. 11/14/12), 111 So.3d 386, 388-389. Moreover, LSA-R.S. 14:98(A) is not limited in scope to operating a vehicle on state highways or public roads. See Carr, 761 So.2d at 1278 ; State v. Layssard, 310 So.2d 107, 110 (La. 1975) ("evidence of driving while intoxicated, even in the neighbor's yard, would constitute some evidence of the offense"); State v. Smith, 93-1490 (La. App. 1st Cir. 6/24/94), 638 So.2d 1212, 1215, ("evidence of operating a vehicle while intoxicated, even in the ditch, constitutes evidence of the offense").